1

2

3

4

5          **UNITED STATES DISTRICT COURT**

6          **EASTERN DISTRICT OF CALIFORNIA**

7

8    MARKUS HEITKOETTER, an individual,            CASE NO. 22-cv-368-AWI-BAM
     and ROCKWELL TRADING SERVICES,
9    LLC, a Texas limited liability company,
                                                   **ORDER DENYING DEFENDANT'S**
10                           Plaintiff,             **MOTION TO STRIKE AND GRANTING**
                        v.                          **DEFENDANT'S MOTION TO DISMISS**
11
     KARL DOMM, an individual,
12                                                 (Doc. No. 9)
                             Defendant.
13

14

15

16

17          Plaintiffs Markus Heitkoetter and Rockwell Trading Services, LLC ("Rockwell") bring

18   several claims sounding in defamation against Defendant Karl Domm based on allegations that he

19   published injurious falsehoods about their investment program through a video and comments on

20   YouTube. Doc. No. 1. Defendant has brought a special motion to strike the Complaint under

21   California's anti-SLAPP[1] law, as set forth in section 425.16 of the California Code of Civil

22   Procedure, and a motion to dismiss for failure to allege facts sufficient to state a claim under Rule

23   12(b)(6) of the Federal Rules of Civil Procedure. Doc. No. 9. The motions have been fully briefed

24   and deemed suitable for decision without oral argument pursuant to Local Rule 230(g). Doc. No.

25   16. For the reasons that follow, the motion to strike will be denied and the motion to dismiss will

26   be granted with leave to amend.

27

28   [1] SLAPP stands for "Strategic Lawsuit Against Public Participation." See Planned Parenthood Fed'n of Am., Inc. v.
     Ctr. for Med. Progress, 890 F.3d 828, 831 (9th Cir.), amended, 897 F.3d 1224 (9th Cir. 2018).

## BACKGROUND[2]

Plaintiff Heitkoetter is a "successful and well-respected investor and trader in the stock and real estate markets." Doc. No. 1 ¶ 12. In 2005, he founded Plaintiff Rockwell, which "offers educational services and programs for anyone interested in investing and trading." Id. ¶ 14.

Defendant is "an options trader who markets and sells a course in options trading, similar to that offered by Plaintiffs." Doc. No. 1 ¶ 16. He maintains a YouTube channel, on which he publishes video reviews of investment strategies, services and products offered by larger, better established market participants to increase sales of his investment offerings. Id.¶ 17.

In 2021, Defendant approached Heitkoetter and requested that Heitkoetter appear on his YouTube channel to discuss Plaintiffs' investment services. Doc. No. 1 ¶ 18. Heitkoetter agreed to do so and on May 27, 2021, Defendant published a video of his conversation with Heitkoetter on Defendant's YouTube channel. Id. ¶ 19-20.

On January 21, 2022, Defendant published on his YouTube channel a video entitled "37 Things Markus Heitkoetter/Rockwell Trading is hiding from you!" at the following URL: https://www.youtube.com/watch?v=c40-15kpTTs. Doc. No. 1 ¶ 22. After publishing that video, Defendant sent "an email to all of his YouTube channel subscribers" stating that "[i]t took a year to make th[e] video" and that the video exposed information that Heitkoetter was "hiding from [them]." Id. ¶ 23.

The video makes false statements to the effect that Plaintiffs: "lost their status on their account due to poor performance"; do not provide "real time data" to their customers; "traded certain positions which they had not traded"; traded ARKK; and "lost significant sums of money." Doc. No. 1 ¶ 25. Further, the video falsely states that Defendant lost money using Plaintiffs' investment system and that Defendant "has proven" through testing that Plaintiffs' investment system does not work. Id.

Similarly, the video contains "misleading statements about Plaintiffs such as that Plaintiffs are trying to hide information from their customers, that Plaintiffs' clients lost significant sums of money, that Plaintiffs are trying to hide YouTube videos through algorithm manipulation, and that

---

[2] This section summarizes relevant allegations in the Complaint. See Doc. No. 1.

2

Plaintiffs do not advise their customers of the risks associated with option trading." Doc. No. 1 ¶ 26. Similarly, the video falsely implies that "Plaintiffs only recommend long options in its courses, that Plaintiffs recommend options that are not available, that Plaintiffs use the dangerous and widely discredited Martingale strategy, that Plaintiffs attempt to hide updates which discuss poor performance or losses, and that Plaintiffs opened a new account to hide poor performances on other accounts." Id. ¶ 27.

Defendant published additional false and defamatory statements in written responses to public comment on the video, including statements that Plaintiffs had lost money and were hiding information from their customers. Doc. No. 1 ¶ 28.

On January 27, 2022, Plaintiffs published a video to their YouTube channel featuring a Rockwell employee with 27 years of experience in the investment industry, including 16 years of experience with Rockwell. Doc. No. 1 ¶ 29. Defendant posted a comment on that video promoting his own investment services while falsely stating that Plaintiffs were "relying on the new guy with no knowledge" and otherwise disparaging Plaintiffs' offerings. Id.

Defendant continued to post false and defamatory comments on the YouTube page for Plaintiffs' video after January 27, 2022, stating, for example, that Plaintiffs offered a "subscription" service and that Plaintiffs' methods were "proven" to lose money, while urging Plaintiffs' customers to "quit while [they] [we]re ahead." Doc. No. 1 ¶ 31.

Plaintiffs allege that they have suffered "interruption to their business, decrease in customers [and] decreases in revenue" due to Defendant's false statements and bring claims against him for false light, defamation by implication, defamation, intentional interference with prospective economic advantage and deceptive trade practices. Doc. No. 1 ¶¶ 44-73.

**DEFENDANT'S MOTIONS**

*Defendant's Opening Brief*

Defendant brings two motions in his filing: a special motion to strike under California's anti-SLAPP law, Doc. No. 9-1 at 9,[3] and a motion to dismiss for failure to allege facts sufficient to

---

[3] Unless otherwise indicated, citations to page numbers in records on the Court's electronic docket are to the page numbers in the CM/ECF stamp at the top of each page.

1    state a claim under Rule 12(b)(6).[4] Id. at 26.

2           The motion to strike argues that the statements at issue in the Complaint are protected by

3    California's anti-SLAPP law because they "were made in a public forum on an issue of public

4    interest," Doc. No. 9-1 at 7:19-23, and that Plaintiffs cannot show a probability of prevailing on

5    their claims because they fail to allege "constitutional or actual malice." Id. According to

6    Defendant, all of Plaintiffs' claim sound in defamation, id. at 7:3-5, 8:3-5, and Plaintiffs are

7    required to allege malice because Plaintiffs are "limited-purpose public figures" in that they have

8    "placed themselves into the public debate regarding investments, trading, their products, and how

9    to make money in any market." Id. at 19:18-24:2, 26:5-6.

10          The Rule 12(b)(6) motion to dismiss, for its part, argues that claims sounding in

11   defamation are subject to a heightened pleading standard and that Plaintiffs' false statement

12   allegations are too vague to state a claim.[5] Doc. No. 9-1 at 26:9-28:20.

13   _Plaintiffs' Opposition_

14          As to the motion to strike, Plaintiffs argue that Defendant's statements are not protected by

15   California's anti-SLAPP law because they fall within the commercial speech exemption codified

16   in section 425.17 of the California Code of Civil Procedure. Doc. No. 13 at 5:23-28. Plaintiffs

17   support this argument with a declaration from Heitkoetter elaborating on allegations in the

18   Complaint, Doc. No. 13-1, and a declaration from Plaintiffs' attorney setting forth: (i) "a copy of

19   Defendant's YouTube page showing all of the videos published by [Defendant]"; (ii) a USB drive

20   containing a video entitled "The Proprietary Wheel Strategy (It's FREE!)" that was published to

21

22   [4] Unless otherwise indicated, "Rule," as used herein, refers to the Federal Rules of Civil Procedure.
     [5] Defendant filed, in support of his motions, a declaration from his counsel attaching: a copy of the allegedly

23   defamatory January 21, 2022 video (entitled "37 Things Markus Heitkoetter/Rockwell Trading is hiding from you!");
     a transcript of that video; and a pdf of the YouTube comment section for the video. Doc. No. 9-2. Further, Defendant

24   requested that the Court take judicial notice of fifteen records, including: a complaint from an action brought by
     Heitkoetter and Rockwell in Texas state court; a press release and two other publications from the Federal Trade

25   Commission ("FTC"); various sections of Rockwell's website; a list of videos available on Rockwell's YouTube
     channel; articles published by Plaintiffs; the "face page of Plaintiffs' Twitter account"; a portion of the comment

26   section for a video Plaintiffs published to YouTube on January 10, 2022; and "Defendant's webpage regarding course
     materials located at https://real pl.com/available-courses/." Doc. No. 9-3. Plaintiffs filed objections on July 1, 2022 to

27   the Texas state court complaint, two of the FTC records, one of Plaintiffs' articles and the YouTube comment section
     for the January 10, 2022 video. Doc No. 17. Plaintiffs' objections are untimely because they were filed more than a

28   week after Defendant filed the reply in further support of his motions, see Doc. No. 15, and in any event, the Court did
     not rely on the records at issue in deciding either motion. The Court, therefore, need not address the objections. See
     Schwarm v. Craighead, 552 F. Supp. 2d 1056, 1063 n.1 (E.D. Cal. 2008).

1  YouTube by Defendant on December 30, 2021; (iii) a transcript of that video; and (iv) a link to all

2  "courses and services" offered by Defendant on his website. Doc. No. 13-2.

3          As to the motion to dismiss, Plaintiffs dispute Defendant's assertion that claims sounding

4  in defamation are subject to a heightened pleading standard and contend that they have alleged

5  false statements with "sufficient particularity," consistent with the applicable federal pleading

6  standard. Doc. No. 13 at 21:4-24:4.

7  _Defendant's Reply_

8          In addition to reiterating arguments made in his opening brief, Defendant argues on reply

9  that evidence offered by Plaintiffs as to the applicability of the commercial speech exemption is

10  inadmissible because Defendant "challenges the legal sufficiency, not the factual sufficiency of

11  Plaintiffs' complaint." Doc. No. 15 at 3:8-10, 3:17-26. Further, Defendant argues that he is not in

12  competition with Plaintiffs and that his YouTube channel does not constitute commercial speech

13  because it offers "free information for the consuming public, and nothing more." Id. at 5:7, 5:18-

14  20.

15                                              **DISCUSSION**

16          The Court will first address Defendant's anti-SLAPP motion to strike and then turn to

17  Defendant's Rule 12(b)(6) motion to dismiss.

18  **A.      Anti-SLAPP Motion to Strike**

19          **1.      Applicable Law**

20          Section 425.16 of the California Code of Civil Procedure[6] "provides for the pre-trial

21  dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs,

22  that 'masquerade as ordinary lawsuits' but are intended to deter ordinary people 'from exercising

23  their political or legal rights or to punish them for doing so.' " Makaeff v. Trump Univ., LLC, 715

24  F.3d 254, 261 (9th Cir. 2013) (quoting Batzel v. Smith, 333 F.3d 1018, 1024 (9th Cir. 2003) (some

25  internal quotation marks omitted); see also Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 839

26

27  [6] This action is in federal court based on diversity jurisdiction under 28 U.S.C. § 1322. Doc. No. 1 ¶ 10. Plaintiffs are
allegedly Texas citizens, while Defendant is allegedly a California citizen. Id. ¶¶ 7-9. The parties appear to agree that
28  California law applies to this case and do not address choice of law in their papers. The Court assumes, for the limited
purpose of deciding this motion, that they are correct.

1  (9th Cir. 2001) ("The anti-SLAPP statute was enacted to allow early dismissal of meritless first

2  amendment cases aimed at chilling expression through costly, time-consuming litigation.")

3        Courts follow a two-step process under section 425.16 in deciding anti-SLAPP motions.

4  Roberts v. McAfee, Inc., 660 F.3d 1156, 1163 (9th Cir. 2011); see also Cal. Code Civ. Proc. §

5  425.16, subd. (b). First, "the defendant must make a *prima facie* showing that plaintiff's claims

6  arise from an act or acts in furtherance of the defendant's rights of petition or free speech in

7  connection with a public issue." Roberts, 660 F.3d at 1163 (quoted source and internal quotation

8  marks omitted) (italics original). "[O]nce the defendant makes this showing, the burden shifts to

9  the plaintiff to demonstrate a probability of prevailing on the challenged claims." Id. at 1163

10 (quoted source and internal quotation marks omitted).

11       The Ninth Circuit allows anti-SLAPP motions in federal court but has "re-written" the

12 second step of the adjudicative process—wherein plaintiffs must "demonstrate a probability of

13 prevailing on [] challenged claims"—to "harmonize it" with Rules 12 and 56 of the Federal Rules

14 of Civil Procedure. CoreCivic Inc. v. Candide Grp. LLC, 2021 WL 1267259, at *5 (N.D. Cal. Apr.

15 6, 2021), appeal dismissed, 2021 WL 5099942 (9th Cir. July 14, 2021). In doing so, the Ninth

16 Circuit has recognized two species of anti-SLAPP motions: (i) motions brought "when a plaintiff

17 presents an insufficient legal basis for his or her claims" and (ii) motions brought "when no

18 sufficiently substantial evidence exists to support a judgment for [the plaintiff]." Planned

19 Parenthood, 890 F.3d at 833. "[D]ifferent standards" are applied to decide anti-SLAPP motions to

20 strike "depending on the motion's basis." Id. "[O]n the one hand, when an anti-SLAPP motion to

21 strike challenges only the legal sufficiency of a claim, a district court should apply the Federal

22 Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." Id. at

23 834. "And, on the other hand, when an anti-SLAPP motion to strike challenges the factual

24 sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply." Id. The

25 Ninth Circuit has held that a plaintiff cannot be required to "present prima facie evidence

26 supporting [his] claims" where an anti-SLAPP motion is based solely on "legal deficiencies"

27 because such a requirement would "transform the motion to strike … into a motion for summary

28 judgment without providing any of the procedural safeguards that have been firmly established by

1  the Federal Rules of Civil Procedure." Id. at 834 (also stating that "state anti-SLAPP rules" cannot

2  be allowed "to usurp the federal rules").

3       Finally, section 425.17 of the California Code of Civil Procedure sets forth exemptions

4  from section 425.16, including the so-called "commercial speech exemption," which provides as

5  follows:

> (c) Section 425.16 does not apply to any cause of action brought against a person
> primarily engaged in the business of selling or leasing goods or services, including,
> but not limited to, insurance, securities, or financial instruments, arising from any
> statement or conduct by that person if both of the following conditions exist:
>
> (1) The statement or conduct consists of representations of fact about that person's
> or a business competitor's business operations, goods, or services, that is made
> for the purpose of obtaining approval for, promoting, or securing sales or leases
> of, or commercial transactions in, the person's goods or services, or the
> statement or conduct was made in the course of delivering the person's goods
> or services.
>
> (2) The intended audience is an actual or potential buyer or customer, or a person
> likely to repeat the statement to, or otherwise influence, an actual or potential
> buyer or customer, or the statement or conduct arose out of or within the
> context of a regulatory approval process, proceeding, or investigation, except
> where the statement or conduct was made by a telephone corporation in the
> course of a proceeding before the California Public Utilities Commission and is
> the subject of a lawsuit brought by a competitor, notwithstanding that the
> conduct or statement concerns an important public issue.

17  Cal. Code Civ. Proc. § 425.17, subd. (c).

18       "If a complaint satisfies the provisions of the [commercial speech exemption in section

19  425.17, subdivision (c)], it may not be attacked under the anti-SLAPP statute." Xu v. Huang, 73

20  Cal.App.5th 802, 813 (2021) (citing Club Members for an Honest Election v. Sierra Club, 45

21  Cal.4th 309, 316 (2008)). In other words, "[a] defendant who makes statements about a business

22  competitor's goods or services to advance the defendant's business cannot use the anti-SLAPP

23  statute against causes of action arising from those statements." Xu, 73 Cal.App.5th at 813

24  (citations omitted).

25       The applicability of the commercial speech exemption is a "threshold issue" to be

26  addressed "prior to examining the applicability of section 425.16," and if the exemption is found

27  to apply, the "special motion to strike should [be] denied without reaching the merits of the

28  motion." People ex rel. Strathmann v. Acacia Rsch. Corp., 210 Cal.App.4th 487, 498 (2012)

1  (addressing the "public interest exception" in section 425.17, subd. (b)); Xu, 73 Cal.App.5th at

2  813 (applying *Strathmann* in the context of the commercial speech exemption in section 425.17,

3  subdivision (c)).

4       **2.**    **Analysis**

5       As set forth above, a cause of action is exempt from anti-SLAPP law by virtue of the

6  commercial speech exemption in section 425.17 when: "(1) the cause of action is against a person

7  primarily engaged in the business of selling or leasing goods or services; (2) the cause of action

8  arises from a statement or conduct by that person consisting of representations of fact about that

9  person's or a business competitor's business operations, goods, or services; (3) the statement or

10  conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or

11  leases of, or commercial transactions in, the person's goods or services or in the course of

12  delivering the person's goods or services; and (4) the intended audience is an actual or potential

13  buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual

14  or potential buyer or customer." Abrahamson v. Berkley, 2016 WL 8673060, at *14 (E.D. Cal.

15  Sept. 2, 2016) (Ishii, J.) (citing Simpson Strong-Tie Co. v. Gore, 49 Cal.4th 12, 30 (2010) and

16  Hawran v. Hixson, 209 Cal.App.4th 256, 271 (2012)).

17       Here, the Complaint alleges that Plaintiffs offer "education services and programs for

18  anyone interested in investing and trading," and that Defendant is "an options trader who markets

19  and sells a course in options trading, similar to that offered by Plaintiffs." Doc. No. 1 ¶¶ 14, 16.

20  Similarly, the Complaint alleges that "Defendant maintains a YouTube channel to market his

21  services" and that "[p]art of Defendant[']s strategy to increase his exposure, and thus increase his

22  sales, includes 'reviewing' the services and strategies of other companies." Id. ¶ 17. Further, the

23  Complaint describes relevant aspects of the allegedly defamatory video; provides a link to the

24  video; and alleges that Defendant used the video (as well as comments regarding the video and

25  comments on an investment video published by Plaintiffs) to generate exposure for his investment

26  programs, while undercutting Plaintiffs' offerings. Id. ¶¶ 22-31.

27       In addition to these allegations, evidence adduced by Plaintiffs shows that Defendant

28  posted a YouTube video entitled "The Proprietary Safe Wheel Strategy (It's FREE!)") on

1    December 30, 2021 that promotes the January 3, 2022 launch of Defendant's "SAFE Wheel

2    Strategy" for investment in financial markets; criticizes Plaintiffs' "old school" version of the

3    "wheel strategy"; and provides a direct link to a $59 "flow chart" for use in connection with

4    Defendant's "safe wheel … system." Doc. No. 13-2 ¶ 5;

5    https://www.youtube.com/watch?v=ADJqWmSG74c;[7] https://rkdllc.thrivecart.com/2060-fly-

6    copy-2/. The record further shows that the allegedly defamatory video—which purports to reveal

7    "37 [t]hings" Plaintiffs do not want investors to know about their "wheel strategy" and "wheel

8    strategy" software—was published less than three weeks after the January 3, 2022 launch of

9    Defendant's "Proprietary Safe Wheel Strategy" and provides a direct link to Defendant's "FREE

10   Proprietary Trading Course." Doc. No. 1 ¶ 22; https://www.youtube.com/watch?v=c40-15kpTTs;

11   https://rkdllc.thrivecart.com/2060-fly-copy-2/. Finally, Plaintiffs show that Defendant sells several

12   investment courses (at prices of up to $200 per month or a flat fee of $495), Doc. No. 13-2 ¶ 7;

13   https://real-pl.com/available-courses/, and that giveaways such as the "FREE Proprietary Trading

14   Course" are intended to boost Defendant's sales. Doc. No. 13-2 ¶ 7 & at 56 (transcript from

15   December 30, 2021 video entitled "The Proprietary Safe Wheel Strategy (It's FREE!)" in which

16   Defendant states: "If I can use my skills to help people and grow my channel, it's a win-win. Now,

17   I also have other online products available, so if I can provide value for free, maybe you'll trust

18   me to provide more value behind a paywall.").

19         Defendant argues that Plaintiffs cannot use evidence outside the Complaint to show that

20   the commercial speech exemption in section 425.17 applies to Plaintiffs' claims because his anti-

21   SLAPP motion is predicated solely on the legal insufficiency (as opposed to the factual

22   insufficiency) of the Complaint. Doc. No. 15 at 2:22-4:5. According to Defendant, the Ninth

23   Circuit "settled the issue of whether a plaintiff can submit extraneous evidence in response to a

24   legal challenge under Rule 12(b)(6) with respect to anti-SLAPP cases" in *Herring Networks, Inc.*

25   *v. Maddow*, 8 F.4th 1148 (9th Cir. 2021), where the Ninth Circuit "upheld the district court's

26   exclusion of evidence that plaintiff presented." Id. at 3:3-8.

27         The *Herring Networks* opinion, however, does not address section 425.17. It only

28
_____
[7] All websites cited in this order were last checked on November 4, 2022.

1  addresses section 425.16 and more specifically, the second step of the two-part section 425.16

2  analysis, dealing with the merits of claims found in step one to fall within the ambit of California's

3  anti-SLAPP law. It was "undisputed" that the speech at issue in *Herring Networks* was entitled to

4  anti-SLAPP protection and consequently, "the only question" before the Ninth Circuit was

5  "whether the district court erred in holding that [plaintiff] failed to demonstrate a reasonable

6  probability of prevailing on his defamation claim." Herring Networks, 8 F.4th at 1156–57.

7       In deciding that question, the Ninth Circuit found that plaintiff's "reliance on evidence

8  outside of its complaint in defending against the motion was improper and inconsistent with the

9  Federal Rules" because the motion was styled as an attack on the "legal sufficiency" of the

10  complaint and thus governed by Rule 12(b)(6). Herring Networks, 8 F.4th at 1156. The question

11  here, however, is not whether Plaintiffs can satisfy the second prong of the section 425.16 analysis

12  by demonstrating a probability of prevailing on their claims, but whether section 425.17 allows

13  Defendant to bring a section 425.16 motion in the first place. See Xu, 73 Cal.App.5th at 813 (the

14  applicability of the commercial speech exemption in section 425.17 is a "threshold issue" to be

15  addressed "prior to examining the applicability of section 425.16").

16       Courts routinely use evidence to assess the applicability of the commercial speech

17  exemption,[8] and *Herring Networks*—which is concerned solely with prong two of the section

18  425.16 test—does not speak to that practice or otherwise address section 425.17.[9] Further, the

19  Ninth Circuit's rationale for barring extrinsic evidence in deciding "legal sufficiency" motions

20

21  [8] See, e.g., Hu & Assocs., LLC v. New Life Senior Wellness Ctr., LLC, 2017 WL 10591754, at *13 (C.D. Cal. July 7, 2017) (finding that section 425.17 did not bar section 425.16 motion to strike because "evidence" showed that

22  comments in question could be "interpreted as an effort to discourage investors from choosing [a particular] project" but could not "reasonably be construed as the promotion of [d]efendants' developments"); Girafa.com, Inc. v. Alexa

23  Internet, Inc., 2008 WL 4500858, at *5 (N.D. Cal. Oct. 6, 2008) (using "evidence" to determine that defendant was "in the business of providing services to websites and internet users"—not "in the business of licensing its patents"— and that consequently, section 425.17 did not bar defendant's section 425.16 motion to strike).

24  [9] The only relevant similarity between section 425.16 and the commercial speech exemption for purposes of this motion has to do with the first prong of the section 425.16 analysis, which calls for a threshold determination as to

25  whether statements are of the sort entitled to anti-SLAPP protection. The Court is not aware of any authority barring the use of extrinsic evidence in prong-one determinations under section 425.16, see Cox v. Mariposa Cnty., 445

26  F.Supp.3d 804, 820-21 (E.D. Cal. 2020) (addressing the showing required under step one of section 425.16 analysis), and indeed Ninth Circuit law appears to call for extrinsic evidence in that context. See Herring Networks, 8 F.4th at

27  1155 ("To prevail on an anti-SLAPP motion, the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." (quoted source

28  and internal quotation marks omitted)). Thus, the Court sees no basis for inferring from section 425.16 that extrinsic evidence cannot be used to determine the applicability of the commercial speech exemption.

1   (avoiding factual determinations going to the merits of claims based on a potentially incomplete

2   record lacking procedural safeguards, see Planned Parenthood, 890 F.3d at 833) does not apply to

3   section 425.17 because courts can order separate, procedurally sound discovery on section 425.17

4   exemptions (including the commercial speech exemption) without reaching merits. See, e.g., Hu,

5   2017 WL 10591754 at *1 (court "ordered limited discovery 'to address whether [p]laintiffs and

6   [d]efendants [were] competitors and, if so, whether the commercial speech exception to the anti-

7   SLAPP statute applied' "). Similarly, section 425.17 calls for numerous factual determinations that

8   "short and plain" Rule 8 pleadings, see Fed.R.Civ.P. 8, are unlikely to address in full. See

9   generally Cal. Code Civ. Proc. § 425.17, subd. (c). And finally, barring the use of extraneous

10  evidence to determine whether the commercial speech exemption applies to claims challenged for

11  lack of legal sufficiency would, in effect, require plaintiffs to plead facts as to all four aspects of

12  the commercial speech exemption to avoid unjustified anti-SLAPP motions (and the expense and

13  risk that such motions necessarily entail). Such a *de facto* pleading requirement would appear to

14  conflict with Rule 8(a) of the Federal Rules of Civil Procedure, which only requires allegations as

15  to jurisdiction, the claims justifying relief, and the relief sought. Fed.R.Civ.P. 8(a); see also

16  Planned Parenthood, 890 F.3d at 834 (stating that "state anti-SLAPP rules" cannot be allowed "to

17  usurp the federal rules"). The Court therefore finds that it is proper to consider Plaintiffs' evidence

18  (which Defendant does not oppose on other grounds) in deciding whether section 425.17's

19  commercial speech exemption applies to Plaintiffs' claims.

20          Defendant also argues that the commercial speech exemption only applies to "comparative

21  advertising." Doc. No. 15:16-7:14. Defendant maintains that he was not a competitor engaged in

22  "comparative advertising" because he merely offered a "free consumer review" of Plaintiffs'

23  offering, id. at 7:6-14, and because unlike Plaintiffs, he sells trading courses, not trading software.

24  Id. at 6:16-18. Commercial offerings, however, need not be identical to be in competition with one

25  another. Trading software and trading courses can be "economic substitutes" that are

26  "interchangeable" from a consumer standpoint despite their differences, cf. Coal. For ICANN

27  Transparency, Inc. v. VeriSign, Inc., 611 F.3d 495, 507 (9th Cir. 2010) (addressing, in an antitrust

28  context, whether "[a] product and its substitutes are reasonably interchangeable by consumers for

1   the same purpose"); <u>In re eBay Seller Antitrust Litig.</u>, 545 F.Supp.2d 1027, 1031 (N.D. Cal. 2008)

2   (stating, in an antitrust context, that "services that are reasonably interchangeable" with one

3   another are "economic substitutes"); and the evidence summarized above shows that Defendant

4   was using Plaintiffs and their offerings as a foil to promote his supposedly "proprietary" version of

5   the "wheel" investment program and to drive the sale of related products.

6        In sum, evidence properly adduced by Plaintiffs shows not only that the parties were

7   competitors but also that Defendant made the statements at issue here about Plaintiffs' investment

8   offerings to "advance [his] business." <u>See</u> <u>Xu</u>, 73 Cal.App.5th at 813. Consequently, Defendant is

9   barred by the commercial speech exemption from using the anti-SLAPP law against Plaintiffs'

10  claims and his motion to strike must be denied. <u>See</u> Cal. Code Civ. Proc. § 425.17, subd. (c).

11  **B.    <u>Motion to Dismiss</u>**

12       **1.    <u>Legal Framework</u>**

13       Under Rule 12(b)(6), a cause of action may be dismissed where a plaintiff fails "to state a

14  claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Dismissal under Rule 12(b)(6)

15  may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged

16  under a cognizable legal theory. <u>Conservation Force v. Salazar</u>, 646 F.3d 1240, 1242 (9th Cir.

17  2011); <u>Johnson v. Riverside Healthcare Sys., LP</u>, 534 F.3d 1116, 1121–22 (9th Cir. 2008). To

18  survive a Rule 12(b)(6) motion for failure to allege sufficient facts, a complaint must include a

19  "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P.

20  8(a)(2). Compliance with this rule ensures that the defendant has "fair notice of what the ... claim

21  is and the grounds upon which it rests." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)

22  (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted). Under this

23  standard, a complaint must contain sufficient factual matter to "state a claim to relief that is

24  plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at

25  570) (internal quotation marks omitted). A claim has facial plausibility when the plaintiff pleads

26  factual content that allows the court to draw the reasonable inference that the defendant is liable

27  for the alleged misconduct. <u>Id.</u> at 663 (citation omitted). If a motion to dismiss is granted, "a

28  district court should grant leave to amend even if no request to amend the pleading was made,

1  unless it determines that the pleading could not possibly be cured by the allegation of other facts."

2  Henry A. v Willden, 678 F.3d 991, 1005 (9th Cir. 2012) (quoted source omitted).

3      **2.     Discussion**

4      Defendant contends that claims sounding in defamation are subject to a "more stringent"

5  pleading standard than other claims and that Plaintiffs' claims must be dismissed because

6  Plaintiffs have failed to identify, with the requisite specificity, the "actual statements" at issue.

7  Doc. No. 9-1 at 26:9-13, 27:12-21. Defendant further argues that he has been unable to map

8  Plaintiffs' allegations to the allegedly defamatory video and therefore cannot determine "what

9  actual statement was allegedly complained of, whether it is defamatory on its face, and whether

10 the statement is non-actionable opinion or a statement of fact." Id. at 27:12-28:13. Plaintiffs, for

11 their part, argue that defamation is not subject to a heightened pleading standard in federal court

12 and that it is not necessary to "repeat" defamatory statements "verbatim" to survive a Rule

13 12(b)(6) motion. Doc. No. 123 at 21:4-13, 22:12-13.

14     Plaintiffs are correct that "the Federal Rules of Civil Procedure impose no special pleading

15 requirements for defamation," Miller v. Sawant, 18 F.4th 328, 337–38 (9th Cir. 2021) (quoting

16 Croixland Props. Ltd. P'ship v. Corcoran, 174 F.3d 213, 215 n.2 (D.C. Cir. 1999) (internal

17 quotation marks omitted), and that a plaintiff asserting a state-law defamation claim in federal

18 court need only satisfy Rule 8(a). Id. (citations omitted); see also Care Plus Ins. Mktg. v.

19 Connecticut Gen. Life Ins. Co., 2010 WL 5394772, at *5 (E.D. Cal. Dec. 21, 2010) (Ishii, C.J.)

20 ("Federal Rule of Civil Procedure 8(a)(2) applies to Plaintiffs' defamation claim ….").

21     A pleading, however, must nonetheless give a defendant "fair notice" of the "grounds upon

22 which" a claim rests, U.S. ex rel. Putnam v. E. Idaho Reg'l Med. Ctr., 2008 WL 4498812, at *1

23 (D. Idaho Oct. 3, 2008) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)), which means, at a

24 minimum, providing sufficient information to "enable preparation of a defense" Cenis v. Winco

25 Holdings, Inc., 2016 WL 8730683, at *4 (E.D. Cal. Aug. 12, 2016) ("A plaintiff … must at least

26 provide 'sufficient notice of the issues to enable preparation of a defense.' " (quoting Roland-

27 Warren v. Sunrise Senior Living, Inc., 2009 WL 2406356, at *7 (S.D. Cal. Aug. 4, 2009)).

28     To state a claim for defamation under California law, a plaintiff must allege (1) a

publication that is (2) false, (3) defamatory, (4) unprivileged, and that (5) has a natural tendency to injure or causes special damage.[10] <u>Taus v. Loftus</u>, 40 Cal.4th 683, 720 (2007). For a defamation claim to be "adequately pleaded," "all the elements necessary for the defamation cause of action" must be "at least inferable from the complaint." <u>Williams v. Gorton</u>, 529 F.2d 668, 672 (9th Cir. 1976). Thus, "[e]ven under the liberal federal pleading standards, general allegations of [] defamatory statements that do not identify the substance of what was said are insufficient." <u>Gallagher v. Philipps</u>, 563 F.Supp.3d 1048, 1079 (S.D. Cal. 2021) (quoting <u>Erhart v. BofI Holding, Inc.</u>, 269 F.Supp.3d 1059, 1083 (S.D. Cal. 2017)) (internal quotation marks omitted); <u>Silicon Knights, Inc. v. Crystal Dynamics, Inc.</u>, 983 F.Supp. 1303, 1314 (N.D. Cal. 1997) ("the words constituting a libel or slander must be specifically identified, if not pleaded verbatim" and "the substance of the defamatory statement must be alleged" (cited sources and internal quotation marks omitted)).

Reviewing the Complaint, the Court agrees with Defendant that Plaintiffs' allegations as to defamatory statements are insufficient. Paragraph 25, for example, alleges that Defendant "falsely stated" that "Plaintiffs do not provide real time data to its customers" and "that Plaintiffs lost significant sums of money." Doc. No. 1 ¶ 25. Paragraph 26, similarly, alleges that Defendant "falsely implied" that Plaintiffs "only recommend long options in [their] courses," and paragraph 27 alleges that the defamatory video contains "misleading statements about Plaintiffs such as that Plaintiffs are trying to hide information from their customers." <u>Id.</u> ¶¶ 26-27. Like Defendant, the Court could not confidently map Plaintiffs' allegations to the video in many instances, and Plaintiffs' allegations largely strike the Court as generalizations reflecting Plaintiffs' interpretation

---

[10] Defendant argues in his motion to strike that Plaintiffs must also allege malice to state a defamation claim because Plaintiffs are "limited-purpose public figures." Doc. No. 15 at 10. This argument is not expressly restated in Defendant's motion to dismiss but regardless, it fails for two reasons. First, the statements at issue here (which pertain solely to purported deficiencies and irregularities in Plaintiffs' investment offerings) are plainly about Plaintiffs' "specific business practices," <u>FilmOn.com Inc. v. DoubleVerify Inc.</u>, 7 Cal.5th 133, 149 (2019), and Defendant has not plausibly demonstrated a meaningful "functional relationship" (or the requisite "degree of closeness"), <u>see id.</u> at 149 & 150, between his alleged attacks on Plaintiffs and a "public conversation" about a "matter of public interest." <u>See id.</u> The purpose of Defendant's statements, as alleged, is apparently to steer potential customers away from Plaintiffs and to himself. Second, the Court agrees with Plaintiffs that the complaint adequately alleges malice because a jury could infer from allegations that Defendant "investigat[ed]" Plaintiffs' offerings, discussed the offerings with Heitkoetter, "took a year to make the video" and made statements regarding his own experience with Plaintiffs' offerings, Doc. No. 1 ¶¶ 18-19, 23 & 25, that Defendant acted "with knowledge" that his statements were false or, at least, "with reckless disregard for the truth." <u>Reader's Digest Assn. v. Superior Court</u>, 37 Cal.3d 244, 253 (1984).

or summary of statements made by Defendant, as opposed to factual allegations as to the "substance" of the statements underlying Plaintiffs' claims. Plaintiffs quote some of the comments supposedly posted by Defendant in response to Plaintiffs' January 27, 2022 video, but the quotations are too fragmented and abbreviated to be meaningful. See Doc. No. 1 ¶¶ 29, 31; see also Gallagher, 563 F.Supp.3d at 1079 ("Defamation actions cannot be based on snippets taken out of context." (quoting Issa v. Applegate, 31 Cal.App.5th 689, 713–14 (2019) (internal quotation marks omitted)).

Without substantial, unfiltered allegations as to what Defendant actually said, the Court cannot plausibly infer a defamation claim from the Complaint and Defendant cannot properly prosecute this motion or prepare other aspects of its defense. The Court will therefore grant Defendant's motion to dismiss. It appears that the pleading defects identified here could potentially be cured through amendment and moreover, Defendant concedes that leave to amend is warranted. Doc. No. 9-1 at 28:18-20. The Court will therefore grant leave to amend consistent with this order and Rule 11. See Willden, 678 F.3d at 1005.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.  Defendant's motion to strike (Doc. No. 9) is DENIED;

2.  Defendant's motion to dismiss (Doc. No. 9) is GRANTED WITH LEAVE TO AMEND;

3.  Plaintiffs have 21 days from the date of electronic service of this order to file a First Amended Complaint ("FAC");

4.  Defendant will have 21 days from the date of electronic service of any FAC to answer or otherwise respond to the FAC;

5.  If Plaintiffs do not file a FAC within 21 days of electronic service of this order, leave to amend will be automatically and immediately withdrawn and this case will be closed with no further notice to the Parties; and

6.  This matter is referred back to the magistrate judge for further proceedings consistent with this order.

IT IS SO ORDERED.

Dated:   November 7, 2022

SENIOR  DISTRICT  JUDGE