UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARKUS HEITKOETTER, et al., | Case No. 1:22-cv-0368-AWI-BAM |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION FOR PROTECTIVE ORDER** |
| v. | ECF No. 22 |
| KARL DOMM, | **INTERIM PROTECTIVE ORDER** |
| Defendant. | |

Currently before the Court is the motion for a protective order filed by Plaintiffs Markus Heitkoetter and Rockwell Trading Services, LLC ("Rockwell" or "Plaintiffs"). Plaintiffs seek to prevent the parties from publishing documents or information obtained through discovery on the Internet. The parties filed a Joint Statement Re: Discovery Disagreement, and the instant motion has been taken under submission. (Doc. 27.)

Having considered the parties' joint statement, and the entire docket, and for the reasons discussed below, the Court finds entry of a protective order appropriate, and Plaintiffs' motion will be granted.

///

///

///

### I. Brief Factual and Procedural Background

Plaintiffs bring several claims sounding in defamation against Defendant Karl Domm based on allegations that he published injurious falsehoods about Plaintiffs' investment program through videos and comments on YouTube.[1] Plaintiffs' filed a First Amended Complaint on November 28, 2022. Defendants filed a motion to dismiss on December 18, 2022. (Doc. 23.) While the parties awaited the ruling on the Motion to Dismiss, the parties agreed to begin discovery. Plaintiffs asked Defendant to enter into a mutual protective order, but Defendant declined. Recently, Defendant posted an additional video to his YouTube channel critical of Plaintiffs. The video, first published on December 10, 2022, disclosed Plaintiffs' financial information that Defendant had obtained through subpoenas. On December 22, 2022, Plaintiffs filed a motion to amend to file a second amended complaint to challenge the posting of the recent YouTube video. Defendant filed a notice of non-opposition to the motion to amend on January 3, 2023. On January 5, 2023, the Court granted the request to amend the first amended complaint, and the second amended complaint was filed on January 5, 2023.

By this motion, Plaintiff seeks a mutual protective order pursuant to Federal Rule of Civil Procedure 26(c) and Local Rule 141.1(b)(1)

### II. Motion for Protective Order

Plaintiffs filed the instant motion for a protective order on December 16, 2022. (Doc. 22.) The parties filed their Joint Statement of Discovery Disagreement, pursuant to Local Rule 251, on December 23, 2022. (Doc. 27.)

#### A. Plaintiffs' Position

Plaintiffs agreed to engage in "early" discovery and, in the spirit of cooperation, engaged in discussions with Defendant for discovery and a protective order. The parties were not able to reach an agreement on a protective order, but agreed to continue to negotiate. Meanwhile, Plaintiffs began producing information requested by Defendant, and Defendant obtained, via

---

[1] According to the second amended complaint, Plaintiff Markus Heitkoetter is a successful and well-respected investor and trader in the stock and real estate markets. Heitkoetter founded Rockwell Trading which currently offers educational services and programs for anyone interested in investing and trading. Defendant is also an options trader who markets and sells a course in options trading, similar to that offered by Plaintiffs. (Doc. 33.)

subpoena, information from several trading platforms used by Plaintiffs.

On December 10, 2022, Defendant published another video to his YouTube channel about Plaintiffs. Defendant showed screenshots of Plaintiffs' financial statements which Defendant obtained through discovery. Plaintiff argues that the financial information Defendant obtained and posted on his YouTube channel would not have been available absent Defendant's involvement in this litigation and the discovery process. The information had been produced by third parties and contained sensitive information including Plaintiff Heitkoetter's social security number. The information is being used solely to market Defendant's financial services to subscribers. Defendant is releasing Plaintiffs' information on his personal YouTube page, and attempting to try this case both in the Courts and on social media.

Plaintiff has a particularized need for a mutual protective order. Plaintiff seeks protection of two different types of information: (1) any information produced specifically through the discovery process and that is not obtained through any other independent means, and (2) traditionally confidential information, including personal identifying information, financial information, and any relevant medical information. (Doc. 27, p. 9-10.)[2] As to the first category, any information produced during the discovery process should not be subject to "publication of such information to the Internet during the pendency of discovery." As to the second category, a producing party could designate traditional types of "confidential" information which could be challenged by the receiving party. Plaintiff is seeking to limit the exposure of documents which the Defendant can publish outside of this proceeding. Plaintiff is not seeking to limit the public access to, or seal, court records. Plaintiff is already harmed. Defendant has already disclosed information obtained through the discovery process, including sensitive personal and financial information and documentation from Plaintiffs. (Doc. 27, p. 11.) Defendant has stated that he will continue to post information disclosed through the discovery process.

Defendant is using this information to direct viewers to his channel and his videos, in an effort to gain additional subscribers and promote his own products. "There is a stronger basis for the issuance of a protective order if a party or person seeks to use discovery materials for private

---

[2] All pagination refers to the Court's CM/ECF filing pagination.

3

commercial gain." *Katz v. Steyn*, No. 2:18-CV-00997 JAD GWF, 2019 WL 13211070, at *5 (D. Nev. Mar. 25, 2019).

Plaintiffs' proposed protective order is narrowly tailored and does not bar either party from obtaining or reviewing discovery. It does not limit dissemination of information gathered by a party through sources other than the discovery process. It limits publication of information obtained through discovery to social media. A protective order will conserve judicial resources and will limit discovery disputes. Defendant has stated that he will continue to post information learned through the discovery process.

### B. Defendant's Position

Defendant alleges that Plaintiffs are limited purpose public figures and complain of a consumer review Defendant published in January 2022. Defendant performs unbiased consumer reviews on products and services in the trading services and education industry. Defendant argues that Plaintiffs are litigious and seek to suppress free speech.

Defendant agrees not to publicize any document obtained in discovery, with the exception of redacted brokerage statements. (Doc. 27 p.5.) Brokerage statements are relied upon to show trading success and Plaintiff Heitkoetter shows his trading accounts, along with the trades and profit and losses. Defendant argues that their brokerage statements are not personal or confidential because Plaintiff Heitkoetter selectively shows them to his thousands of YouTube followers.

This motion was filed because Defendant published a video entitled, "I Subpoenaed Rockwell Trading's Markus Heitkoetter's Trading Statements," published on YouTube on December 10, 2022 ("Video Publication").[3] The Video Publication challenges Plaintiff Heitkoetter's claims of 60% return on investments, by using video of Plaintiff Heitkoetter brokerage statements, and makes clear that Plaintiff Heitkoetter's profits and losses are well below 60%.

---

[3] Defendant lodges a USB drive containing the video file of the Video Publication. (Doc. 27-4.) The Court finds it unnecessary, at this juncture, to evaluate this video. The truth or merits of the video are not at issue in this motion. The sole issue is whether Plaintiffs have carried their burden that confidential and sensitive information should be protected from disclosure **to the public**. The proposed protective order does not preclude disclosure of discovery to Defendant to prepare his defense.

4

Defendant argues that Plaintiffs are not harmed by having their brokerage statements discussed when "they routinely show their statements and summarize their statements to the general public to generate revenue." (Doc. 27 p. 7.) Defendant argues that this issue is a matter of public interest. Further, "not allowing Mr. Domm to discuss any discovery material or discuss any aspect of Plaintiffs' actual trading results operates less as a protective order and more as a prior restraint on Mr. Domm's freedom of speech." *Id.*

Defendant argues that the public is permitted access to litigation documents, including discovery documents and information obtained during discovery, citing *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) and other cases. (Doc. 27, p.15.). Defendant argues that Plaintiff cannot show harm or prejudice from disclosure of Plaintiffs' brokerage statements: Plaintiffs routinely show their live trading account and account status in order to obtain new clients. Plaintiffs' complaint squarely places the issue of Plaintiffs' trading performance directly at issue, and an order would be overreaching because Mr. Domm will be filing brokerage statements as part of the record in this case.  Plaintiffs will not be able to prevail on a motion to seal.  (Doc. 27. P. 16.)

Trading educators, like Plaintiff Heitkoetter and Defendant Domm, frequently show their trading results to the general public. From a review of videos from January 2022 through July of 2022, counsel observed that Plaintiff shared with the public the following information: Plaintiff's brokerage accounts, spreadsheet of gains and losses from trades, spreadsheet of all trades for 2022.  (Doc. 27, p.16-17.) Because Plaintiff Heitkoetter is sharing with the general public on YouTube his accounts, his trading history or brokerage statement do not need to be protected. Plaintiff Heitkoetter routinely and regularly shares his statements and trading results with the public.  Defendant contends that Plaintiffs use their returns selectively to foster an image of success and transparency to retain clients and get new clients.

Plaintiffs placed their trading history at issue when they filed this litigation.  Defendant should not be "silenced" on YouTube as his defense is that Plaintiff is not a remarkable trader. Plaintiff Heitkoetter put his trading reputation directly into the public eye by marketing the trading results and filing the complaint.

5

Redacted brokerage statements are filed in court action and are not private like bank accounts or tax returns. The documents could not be filed under seal under a compelling reason standard.

Public interest weighs against issuing a protective order. Court are public, citing Cal.Civ.Code §124. The Federal Trade Commission targets persons online who make promises of profitability and financial independence to the public in order to sell their product. "[T]rading educator scams and unethical marketing is a public concern for consumers and governmental agencies alike." Plaintiff Heitkoetter's trading history does not live up to his representations. He boasts 100% to 120% on his trading returns. The comments and interest that Defendant's recent Video Publication has generated show that this is matter of public concern and interest. Plaintiffs' profit and losses are in the negative, over three years. Mr. Domm reviewed Plaintiff's trading statements that he obtained via subpoena and summarized his findings for the Video Publication.

Defendant argues that a protective order to restrain Defendant from making any future videos that comment or opine on Plaintiffs' trading record is a prior restraint and is overbroad. An order restricting communication of or regarding Plaintiffs' trading results or brokerage statements is against public policy. Defendant has already contacted the FTC regarding his Video Publication, an order such as the one that Plaintiffs seek would prohibit him from discussing his insights with regulatory investigators. In addition, Defendant argues that countering Plaintiff Heitkoetter's alleged false advertising claims with truthful advertising is necessary for Defendant to successfully counterclaim against Plaintiffs in this case.

### C. Relevant Terms of the Proposed Protective Order

Plaintiffs have submitted a proposed Protective Order. (Doc. 27-1.) The proposed protective order precludes discovery produced in this case from being "published on the Internet."[4] The proposed protective does not prohibit publication of information acquired from an

---

[4] No party, either personally or through their agents or attorneys, shall publish to the Internet any "Disclosure or Discovery Material," a term which shall mean for purposes of this Order any documents or information that is generated, produced or disclosed in disclosures or discovery of this matter." (Doc. 27-1, ¶1,p.2.) "The purpose of this Paragraph is to prevent the parties from publishing documents or information that would not be in the possession or knowledge of the parties but for the production or disclosure of the same in the course of disclosure or discovery in this litigation." *Id.*

6

independent source, unless produced in discovery. A party cannot provide discovery material to a third party for publication. Discovery produced may be marked as Confidential-Subject to Protective Order. Such information includes personal identifying information, financial or commercially sensitive information, and medical information.[5] (Doc. 27-1, p. 3.) The proposed protective order limits to whom Confidential Information may be disclosed. (Doc. 27-1, p.4.) Information produced by a third party may be designated as "Confidential" by providing written notice to the other party within specified time frames. (Doc. 27-1, p. 5.) Confidential Information filed with the Court should be filed under seal, by obtaining leave of Court. The proposed protective order includes a procedure for a party to challenge the designation of Confidential Information.

### III. Discussion

#### A. Legal Standards for a Motion for Protective Order

The Court is vested with broad discretion to manage discovery. *Dichter-Mad Family Partners, LLP v. U.S.*, 709 F.3d 749, 751 (9th Cir. 2013) (per curiam); *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). District courts also have broad discretion to determine whether a protective order is appropriate and, if so, what degree of protection is warranted. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see also Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211–12 (9th Cir. 2002) (finding that the law gives district courts broad latitude to grant protective orders to prevent disclosure of materials for many types of information). Under Rule 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: [ ] forbidding the disclosure or discovery; … [ ]

---

[5] "Confidential Information: (1) the information consists of (i) personal identifying information including social security numbers, financial account numbers, dates of birth, physical addresses, account login information, personal income, current employer(s), and unlisted telephone numbers; (ii) information that constitutes proprietary financial or technical, competitive, or commercially sensitive information that the Producing Party maintains as highly confidential in its business, and which has significant competitive value such that unrestricted disclosure to others would create a substantial risk of serious financial injury; or (iii) medical information, such as medical provider impressions, records and other non-billing information, and, for purposes of this definition it is expressly understood that the term "medical information" is inclusive of information related to mental health care or counselling, and "medical provider" shall include any and all mental health professionals, such as psychologists, licensed social workers, licensed clinical counsellors, licensed family therapists, and any and all other types of mental health providers." (Doc. 27-1,¶2, p.3)

forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; …[or] requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1).

The party seeking to limit discovery has the burden of proving "good cause," which requires a showing "that specific prejudice or harm will result" if the protective order is not granted. *In re Roman Catholic Archbishop of Portland*, 661 F.3d 417, 424 (9th Cir. 2011) (citing *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1130 (9th Cir. 2003)); see Fed. R. Civ. P. 26(c); accord *Beckman Indus., Inc. v. International Ins. Co*., 966 F.2d 470, 476 (9th Cir. 1992) (noting that "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test" (citation omitted)); *see also Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096-97 (9th Cir. 2016) (listing as examples of compelling reasons when "a court record might be used to 'gratify private spite or promote public scandal,' to circulate 'libelous' statements, or 'as sources of business information that might harm a litigant's competitive standing' " (citation omitted)).

Federal Rule of Civil Procedure 26(c)(1)(G) anticipates that in certain cases, discovery of confidential information should either be limited or not permitted. Financial information is generally considered confidential.[6] While there is no federal common law privilege akin to the right of privacy, "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests." *Goldwater Bank, N.A. v. Elizarov*, No. 5:21-CV-00616 JWH SPX, 2022 WL 17081192, at *5 (C.D. Cal. Sept. 21, 2022); *Mei Ma v. Convergent Outsourcing, Inc*., 2017 WL 11634740, at *1 (C.D. Cal. Apr. 21, 2017) (finding a protective order is appropriate when a discovery request seeks financial information); *In re Heritage Bond Litig*., No. CV 02-1475-DT(RCX), 2004 WL 1970058, at *5, n.12 (C.D. Cal. July 23, 2004) ("Any privacy concerns [ ] defendants have in their bank records and related financial

---

[6] In this diversity case, California state law governs privilege. See Fed. R. Evid. 501 ("But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). The Court need not further address the right of privacy to financial information, because both Federal and State law recognize the right.

8

statements are adequately protected by the protective order, and are not sufficient to prevent production in this matter."); *Razo v. AT&T Mobility Servs.,* LLC, No. 1:20-CV-172-NONE-HBK, 2021 WL 5989753, at *18 (E.D. Cal. Dec. 17, 2021) (any privacy concerns can be addressed by a stipulated protective order).

### B. Scope of the Proposed Protective Order

#### 1. Prohibit Publication on the Internet

Here, Plaintiffs' motion is not seeking to limit discovery. Indeed, Plaintiffs have agreed to exchange discovery with Defendant and have in fact produced discovery. Rather, Plaintiffs seek to limit what Defendant may do with the discovery once it is produced.

Plaintiffs seek to preclude Defendant from publishing on the Internet any discovery which is produced during the discovery process. (Doc. 27-1, p.2.) The purpose of the proposed protective order is to "prevent the parties from publishing documents or information that would not be in the possession or knowledge of the parties but for the production or disclosure of the same in the course of disclosure or discovery in this litigation" *Id.* Plaintiffs do not seek to preclude producing discovery to Defendant, and both parties agree that some discovery has been produced. Thus, Plaintiffs' motion for a protective order is limited in its request.

A protective order limiting publication of financial information on the Internet is reasonable in light confidentiality of the information disclosed. The Court finds that Plaintiffs have an interest in the privacy of their financial information disclosed during the course of discovery. Plaintiffs state that brokerage account statements and other financial information were produced to Defendant. Plaintiffs represent that Defendant has published, and Plaintiffs believe will continue to publish, Plaintiffs' financial information on the Internet. Plaintiffs describe how the financial information has already been published and anticipates that future disclosures will occur. Defendant does not dispute that Defendant published certain portions of Plaintiffs' brokerage accounts on the Internet. Thus, a protective order limiting publication of financial information on the Internet is reasonable.

Defendant makes several arguments that a protective order precluding publication on the Internet should be not granted. First, Defendant argues that disclosure on the Internet is in the

public interest and any limitation thereon is a prior restraint.  However, Defendant does not have a right to publish on the Internet the confidential and sensitive information of a party, even if Defendant claims it is in "the public interest."  Such limitation is not a prior restraint, contrary to Defendant's argument.  The Supreme Court has held that "[a] litigant has no First Amendment right of access to information made available only for purposes of trying his suit. (citation omitted). Thus, continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other circumstances." *Seattle Times*, 467 U.S. at 31, 104 S.Ct. at 2206-07.  In *Seattle Times,* the Court held that "an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny."  *Seattle Times Co. v. Rhinehart*, 467 U.S. at 33, 104 S. Ct. at 2208. The Court has a substantial interest in preventing the misuse of information exchanged during discovery. *Id.* at 34–35.

Second, Defendant argues he must have access to information to prove his defenses. The Court does not find persuasive that disclosure of Plaintiffs' financial information on the Internet is necessary for Defendant's defense. Plaintiffs' financial information will be disclosed to him during discovery, and he may prepare his defense as he sees fit, but he is not entitled to publish the information on the Internet.

Defendant next argues that the brokerage statements should be made public to demonstrate Plaintiffs' trading results are false.  But there has been no disposition of Defendant's defense and that defense, standing alone, cannot serve as a basis for rejecting a confidentiality claim on materials obtained during discovery. *See e.g., Williams v. City of Burlington*, Iowa, No. 3:19-CV-00043 SMR HCA, 2020 WL 11027935, at *3 (S.D. Iowa Oct. 5, 2020). There is no prejudice to Defendant because the discovery will be disclosed to Defendant, but it will be kept confidential from public disclosure subject to the protective order.

Defendant argues that there is no confidentiality for the brokerage statements because Plaintiffs have already disclosed some of their statements on the Internet.   Public disclosure of information may waive privileged or confidential information so disclosed.  But that disclosure

does not negate the confidential nature of financial information, **going forward.**[7]

Defendant argues that Plaintiffs have put their trading history at issue in this case and thus, Defendant has a right to disclose that information. The Court agrees that Plaintiffs have placed their trading history at issue in this case. For that reason, Plaintiffs have been, and will be, required to disclose through discovery information related to that trading history. It is an entirely different issue whether Defendant is permitted to use that information in any manner he sees fit. Indeed, he is not entitled to do so. *See generally*, *Seattle Times* 467 U.S. at 33 ("restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information"). The protective order is not restraining Defendant from making videos, but precluding use of confidential and sensitive information obtained through discovery.

2. Scope of Information within the Proposed Protective Order

Plaintiffs ask for the protective order to include all documents disclosed in discovery: "any information produced specifically through the discovery process and that is not obtained through any other independent means." (Doc. 27, p. 9-10.)

Defendant does not object to a protective order in most respects because Defendant states in the Joint Statement: "To be clear, *Mr. Domm agrees to not publicize any document obtained in discovery, with the exception of redacted brokerage statements (Plaintiffs' or Defendant's brokerage statements*)." (Doc. 27 p. 5 (emphasis in original).) Thus, Defendant's sole objection to the protective order is as to either parties' brokerage statements. The Court, having found confidentiality in financial information for Plaintiffs, overrules that objection.

Accordingly, the Court GRANTS the request for a protective order to prohibit disseminating or publishing information disclosed through the discovery process on the Internet.[8]

Defendant does not object to the two other categories of documents and information being within the scope of the protective order: personal identifying information and medical

---

[7] To the extent the motion for a protective order can be construed as a request to remove the Video Publication from the Internet, the Court does not address that issue. A protective order deals with conduct going forward, and does not enjoin past conduct.

[8] The term "Internet" should be construed broadly. The Court clarifies that a broad interpretation of the internet is warranted to protect the interests at stake, and the "Internet" should include "social media" within the scope of the protective order.

information. (Doc. 27-1, p. 3.) However, Defendant also states: "Mr. Domm does not agree to the confidentiality portions of Plaintiffs' proposed order as they are unduly burdensome and cumbersome. Defendant requests an order for the parties to meet and confer further on aspects of the confidentiality provisions of the proposed order." (Doc. 27, p. 6 n.2.) Nonetheless, the Court finds any proposed protective order must include personal identifying information and medical information within "Confidential" information subject to the protective order. (See Doc. 27-1, p. 3 ¶2.)  The Court will permit the parties to define the precise contours through meet and confer, but the Court will enter an interim protective order.

The proposed protective order is appropriately narrow because the protective order does not prevent Defendant from using independently acquired information from outside of the discovery process. "Federal Rules do not provide the authority to issue protective orders to documents obtained outside the scope of discovery." *See Eaglesmith v. Ray*, No. 2:11-CV-0098-JAM-JFM, 2012 WL 1554922, at *3 (E.D. Cal. May 1, 2012) (concluding that the court's inherent authority, not Rule 26(b)(5), enabled it to issue an order requiring Plaintiff to return Defendant's privileged documents where Plaintiff acquired the documents through a non-party source outside the discovery process); *Doe v. Fitzgerald*, No. CV-20-10713 MWF RAOX, 2022 WL 4596557, at *4 (C.D. Cal. Sept. 21, 2022) (declining to require the destruction of audio recordings that were obtained by Defendant's counsel outside of the discovery process.)

Defendant argues that the protective order is akin to sealing court documents, and the Court should not permit sealing of records filed with the Court. Courts recognize a presumption of public access to court records based on common law and First Amendment (free press) grounds. *Phillips ex rel. Estates of Byrd v. General Motors Corp*. 307 F3d 1206, 1212 (9th Cir. 2002).  However, access may be denied where the court determines that court-filed documents may be used for improper purposes; e.g., "to gratify private spite or promote public scandal" or to circulate libelous statements or release trade secrets. *Nixon v. Warner Communications, Inc*., 435 U.S. 589, 598, 98 S.Ct. 1306, 1312 (1978). Permission to seal documents is governed by Local Rule 141.

Here, the Court is not ruling on a request to seal documents.  Should the parties later seek

to file information subject to the protective order, the Court directs the parties to be surgical in their redactions and to submit for sealing only proprietary information, financial documents, confidential company trade secrets (if any), and related discussion.

### IV. Conclusion and Order

Based on the foregoing, the Court finds that good cause exists for entry of a protective order, for the documents and information described in this Order, that precludes either party from publicly disseminating, on the Internet or otherwise, the documents or information obtained during discovery in this action. This order does not preclude either party from publishing information that is independently acquired outside of the discovery process or is admitted into evidence at trial and thereby becomes part of the public record. The Court further orders that the information shall not be disclosed to third persons who have no interest or involvement in this action, except as may be authorized by future court order. The protective order applies to the parties, their agents, including the parties' counsel and counsel's staff.

Therefore, the Motion for a Protective Order is GRANTED for the documents and information noted in this Order.

The parties shall meet and confer on proposed definition for "Confidential" information and shall submit a revised protective order, in compliance with this order, for the Court's review within thirty (30) days of service of this order.

**INTERIM PROTECTIVE ORDER:**

The Court enters an interim protective order that, for the documents and information described in this Order, the parties are precluded from publicly disseminating, on the Internet or otherwise, the documents or information obtained during discovery in this action. The Court further orders that the information shall not be disclosed to third persons who have no interest or involvement in this action, except as may be authorized by future court order. The protective order applies to the parties, their agents, including the parties' counsel and counsel's staff.

IT IS SO ORDERED.

Dated: __**January 6, 2023**__          /s/ *Barbara A. McAuliffe*

UNITED STATES MAGISTRATE JUDGE