1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARKUS HEITKOETTER, et al.,                Case No.  1:22-cv-00368-NODJ-BAM

12               Plaintiffs,                     **ORDER GRANTING IN PART AND
                                                 DENYING IN PART DEFENDANT'S**
13        v.                                     **MOTION TO STRIKE AND MOTION TO
                                                 DISMISS THIRD AMENDED**
14   KARL DOMM,                                  **COMPLAINT**

15               Defendant.                      (Doc. 63)

16

17

18        This matter is before the Court on Defendant Karl Domm's ("Defendant") Motion to

19   Dismiss Under Rule 12(b)(6) and Special Motion to Strike Plaintiffs' Complaint.  (Doc. 63.)

20   Plaintiffs Markus Heitkoetter and Rockwell Trading Services, LLC ("Plaintiffs") filed an

21   opposition on July 10, 2023.  (Doc. 67.)  Defendant filed his reply on July 20, 2023.  (Doc. 70.)

22   Having carefully considered the briefing filed by all parties, and for the reasons detailed below,

23   Defendant's Motion to Dismiss and Motion to Strike will be GRANTED IN PART and DENIED

24   IN PART.

25   **I.    BACKGROUND**

26        Plaintiffs filed this action on March 29, 2022.  (Doc. 1.)  On November 7, 2022, the Court

27   issued an order denying Defendant's special motion to strike Plaintiffs' complaint under

28

1

1  California's Anti-SLAPP Statute but granting Defendant's motion to dismiss the Complaint,

2  finding that the allegations as to supposedly defamatory statements were too general and

3  interpretive.  (Doc. 20 at 13-15.)

4      Plaintiffs subsequently filed a First Amended Complaint on December 18, 2022.  (Doc.

5  23.)  Shortly thereafter, Plaintiffs brought an unopposed motion to amend the First Amended

6  Complaint. (Docs. 26, 30.) That motion was granted on January 5, 2023, and Plaintiffs filed the

7  Second Amended Complaint the same day.  (Doc. 32-2.)  The Second Amended Complaint

8  alleged false light, defamation by implication, defamation (libel and libel per se), intentional

9  interference with prospective economic advantage and deceptive trade practices based on videos

10  and comments that Defendant allegedly posted to YouTube regarding Plaintiffs and their

11  investment program.  (Doc. 33.)  Defendant filed a motion to dismiss certain claims (Doc. 36),

12  which the Court granted as to the first cause of action for false light, but denied in all other

13  respects.  (Doc. 44.)

14      On February 16, 2023, the Court entered a Protective Order which stated in part: "No

15  party, either personally or through their agents or attorneys, shall publish to the Internet any

16  'Disclosure or Discovery Material,' a term which shall mean for purposes of this Order any

17  documents or information that is generated, produced or disclosed in disclosures or discovery of

18  this matter."  (Doc. 43 at 2.)

19      On April 6, 2023, Defendant and Counterclaimant Karl Domm filed a counterclaim

20  against Plaintiffs and Counter-Defendants Markus Heitkoetter and Rockwell Trading Services,

21  LLC alleging: (1) False Advertising pursuant to 15 U.S.C. 1125(a)(1)(B); and (2) Violation of

22  California Unfair Competition Law pursuant to Cal. Bus. & Prof. Code Section 17200.  (Doc. 46.)

23  Counterclaimant Domm primarily alleged that Counter-Defendants made false statements in their

24  YouTube advertisements.  (*Id.*)

25      On April 16, 2023, Defendant Domm published a YouTube video entitled "Markus

26  Heitkoetter/Rockwell Trading Sued for False Advertising: 7 Shocking Allegations" which

27  included a link to Defendant's counterclaim.  (Doc. 60 ¶ 59, Exh. B; Doc. 84, Counterclaim

28

1    Video).[1]  In the Counterclaim Video, Defendant began by discussing his own services and

2    process of reviewing other financial trading educational programs before noting that he was being

3    sued in the instant matter and stated that "Markus used the legal system to keep his trading

4    statements private."  (Doc. 84, Counterclaim Video at Timestamp 0:00-3:50.)  Defendant then

5    stated that in the legal proceedings, "the Judge ruled that [he is] allowed to discuss anything that

6    is part of public record. With that in mind, I discovered some interesting information about

7    Markus Heitkoetter."  (*Id.* at Timestamp 3:50-3:57.)  Defendant then discussed documents found

8    through discovery, including a federal tax lien, a mechanic's lien, and another complaint

9    involving Plaintiff Heitkoetter, and asked viewers to inform him if they had any further

10   information regarding these documents and to "make sure [he] didn't miss anything or was

11   inaccurate in any way."  (*Id.* at Timestamp 3:57-5:49.)  Defendant subsequently discussed eight

12   allegations from his counterclaim, reading from the counterclaim while showing either the

13   counterclaim or related images.  (*Id.* at Timestamp 5:50-20:05.)

14           During this segment of the Counterclaim Video, while Defendant primarily read selected

15   allegations directly from his counterclaim, Defendant also digressed to discuss a separate case

16   involving Plaintiff Heitkoetter.  (*Id.* at Timestamp 17:55-19:42.)  After reading Paragraph 72 of

17   his counterclaim, Defendant displayed the complaint in the separate case and provided brief

18   background about that case, then asked "Were you aware of this? I'm going to say it's likely you

19   were possibly not aware of this lawsuit."  (*Id.* at Timestamp 18:32-18:40.)  Defendant discussed

20   how Plaintiff Heitkoetter's name was spelled differently in the other action, and stated "Wow.

21   Markus's last name is spelled differently in this lawsuit compared to this lawsuit.  So make sure

22   when you want to look up this lawsuit you spell his name differently… if you ever want to find

23   this lawsuit."  (*Id.* at Timestamp 18:40-19:30.)  Defendant continued, "it's interesting, isn't it?

24   Did he spell his name differently? Did he just maybe make a mistake in court about how to spell

25   his last name? I guess. I guess so." (*Id.* at Timestamp 19:30-19:42.)  Defendant then displayed his

26   _____

27   [1] For ease of reference, Defendant's April 16, 2023 YouTube video entitled "Markus
     Heitkoetter/Rockwell Trading Sued for False Advertising: 7 Shocking Allegations," incorporated
     into Plaintiff's Third Amended Complaint as part of Exhibit B, is referred to as the "Counterclaim

28   Video," and lodged on January 25, 2024.

1  counterclaim again with annotated allegations and concluded the video by discussing his

2  attorney's efforts in this matter.  (*Id.* at Timestamp 19:43-21:54.)

3  　　　On May 22, 2023, Plaintiffs subsequently filed the operative Third Amended Complaint.

4  (Doc. 60.)  In their Third Amended Complaint, Plaintiffs asserted: (1) defamation by implication;

5  (2) libel and per se libel; (3) intentional interference with prospective economic advantage; (4)

6  deceptive trade practices; and (5) abuse of process.  (*Id.*)

7  　　　On June 12, 2023, Defendant brought the instant motion to dismiss and special motion to

8  strike Plaintiffs' complaint.  (Doc. 63.)  Defendant contends that Plaintiffs' Third Amended

9  Complaint is insufficient, as: (1) Defendant's speech at issue is protected activity under

10  California's Anti-SLAPP Statute; (2) the California litigation privilege and fair and true report

11  privilege protect Defendant's speech and activity; (3) Plaintiffs' claim for defamation by

12  implication regarding the intentional or mistaken spelling of Mr. Heitkoetter's last name in

13  another defamation lawsuit is without merit because no reasonable person would deduce the

14  implications Plaintiffs allege; (4) Plaintiffs cannot plead a cause of action related to their abuse of

15  process claim; and (5) Plaintiffs have not adequately pled their defamation by implication and

16  derivative causes of action.  (*Id.*)  Plaintiffs filed their opposition on July 10, 2023, disputing that

17  these privileges applied, arguing that they had sufficiently pled their claims, and requesting the

18  Court find Defendant's motion meritless and Plaintiffs were entitled to attorneys' fees.  (Doc. 67.)

19  On July 20, 2023, Defendant filed his reply.  (Doc. 70.)  The parties consented to Magistrate

20  Judge jurisdiction for the limited purpose of deciding the pending motion to dismiss.  (Doc. 65.)

21  Defendant's motion was then referred to Magistrate Judge Barbara A. McAuliffe for a final order.

22  (Doc. 66.)

23  **II.    LEGAL STANDARD**

24  　　　A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim, and

25  dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts

26  alleged under a cognizable legal theory.  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42

27  (9th Cir. 2011) (quotation marks and citations omitted).  To survive a motion to dismiss, a

28  complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible

1  on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*,

2  550 U.S. 544, 555 (2007)) (quotation marks omitted); *Conservation Force*, 646 F.3d at 1242;

3  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  "A claim has facial plausibility

4  when the plaintiff pleads factual content that allows the court to draw the reasonable inference

5  that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. While the

6  plausibility requirement is not akin to a probability requirement, it demands more than "a sheer

7  possibility that a defendant has acted unlawfully."  *Id.*  This plausibility inquiry is "a context-

8  specific task that requires the reviewing court to draw on its judicial experience and common

9  sense." *Id.* at 679.

10       In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

11  the court must accept as true the allegations of the complaint in question, *Erickson v. Pardus*, 551

12  U.S. 89, 94 (2007), and construe the pleading in the light most favorable to the plaintiff.  *Jenkins*

13  *v. McKeithen*, 395 U.S. 411, 421 (1969); *Meek v. Cty. of Riverside*, 183 F.3d 962, 965 (9th Cir.

14  1999).  However, the court need not credit "labels and conclusions" or "a formulaic recitation of

15  the elements of a cause of action."  *See Twombly*, 550 U.S. at 555.  The Court is "not required to

16  accept as true allegations that contradict exhibits attached to the Complaint or matters properly

17  subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of

18  fact, or unreasonable inferences."  *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*,

19  733 F.3d 1251, 1254 (9th Cir. 2013).

20       In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits

21  thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

22  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v.*

23  *Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

24       If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

25  amend even if no request to amend the pleading was made, unless it determines that the pleading

26  could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

27  1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

28       ///

5

1

### III.     REQUEST FOR JUDICIAL NOTICE

2          In support of his motion to dismiss and motion to strike, Defendant asks the Court to take

3    judicial notice of the following items: (1) the complaint described as *Markus Heitkotter and*

4    *Rockwell Trading Services, LLC v. John Does*, Case No. D-1-GN-22-000779, filed in the District

5    Court of Travis County, Texas, on February 15, 2022 (Doc. 63-2 at 4-20); (2) the complaint

6    described as *Markus Heitkoeter and Rockwell Trading Services, LLC v. Jacob Stuttgen and*

7    *Breanna Stuttgen*, Case No. 02-cv-23-787, filed February 15, 2023, in County of Anoka, State of

8    Minnesota (Doc. 63-2 at 21-33); (3) a 2017 Warranty Deed with "Markus Heitkotter" listed as the

9    grantee, and "Markus Heitkoetter" listed as the acting grantor, filed in Travis County, Texas

10   (Doc. 63-2 at 34-39); (4) a Mechanic's Lien against "Markus Heitkotter" filed on June 15, 2022,

11   filed in Travis County, Texas (Doc. 63-2 at 40-43); (5) A screen capture from the WayBack

12   Machine, captured on May 4, 2012, from Rockwell Trading.com's website demonstrating

13   Plaintiff Heitkoetter's brother Tobias was an employee and spells his last name as "Heitkotter"

14   (Doc. 63-2 at 44-45); and (6) A portion of the YouTube.com comment section for Defendant's

15   video entitled, "Markus Heitkoetter/Rockwell Trading Sued for False Advertising: 7 Shocking

16   Allegations," published April 16, 2023, available at

17   https://www.youtube.com/watch?v=gfmkpNJE03A (Doc. 63-2 at 46-49).  Plaintiffs do not

18   oppose this request.  (*See* Doc. 67.)

19          Requests for Judicial Notice Nos. 1-4 are complaints and court filings.  (Doc. 63-2 at 4-

20   43.)  Court records are properly subject to judicial notice.  *See* Fed. R. Evid. 201(b) (court may

21   take judicial notice of fact that is not subject to reasonable dispute because it is (1) generally

22   known within the trial court's territorial jurisdiction; or (2) can be accurately and readily

23   determined from sources whose accuracy cannot reasonably be questioned); *see also MGIC*

24   *Indem. Co. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986); *United States v. Wilson*, 631 F.2d 118,

25   119 (9th Cir.1980); *Pierce v. Cantil-Sakauye*, No. C 13-01295 JSW, 2013 WL 4382735, at *3

26   (N.D. Cal. Aug. 13, 2013), aff'd, 628 F. App'x 548 (9th Cir. 2016) ("On a motion to dismiss

27   pursuant to either Rule 12(b)(1) or Rule 12(b)(6), the Court may take judicial notice of court

28   records in other cases.").  Accordingly, Defendant's Requests for Judicial Notice Nos. 1-4 are

1   GRANTED.

2           Request for Judicial Notice No. 5 is a screen capture from the WayBack Machine,

3   captured on May 4, 2012, from RockwellTrading.com's website.  (Doc. 63-2 at 44-45.)

4   Defendant contends that courts may take judicial notice of publications "solely as an indication of

5   what information was in the public realm at the time."  *Von Saher v. Norton Simon Museum of*

6   *Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).  However, this screenshot dates from May

7   2012 and the Court cannot conclude that the contents of this web page represent information that

8   was in the public realm at the time or are "facts that can be accurately and readily determined

9   from sources whose accuracy cannot reasonably be questioned."  *See* Fed. R. Evid. 201(b);

10  *Lindsay v. Shree Enter., LLC*, No. 221CV00299WBSCKD, 2021 WL 2711225, at *3 (E.D. Cal.

11  July 1, 2021) (denying request for judicial notice of WayBack Machine screen captures related to

12  a motion to dismiss).  Accordingly, the court DENIES Defendant's Request for Judicial Notice

13  No. 5.

14          Request for Judicial Notice No. 6 is a portion of the YouTube.com comment section for

15  Defendant's video entitled, "Markus Heitkoetter/Rockwell Trading Sued for False Advertising: 7

16  Shocking Allegations," published April 16, 2023, available at

17  https://www.youtube.com/watch?v=gfmkpNJE03A.  (Doc. 63-2 at 46-49.)  Defendant similarly

18  suggests in his Request for Judicial Notice that the Court may take judicial notice of these pages

19  as an indication of information in the public realm.  (Doc. 63-2 at 3.)  However, Defendant uses

20  this comment section in his motion to argue that he uses his video "as discovery and investigation

21  by obtaining other witnesses and complainants who leave comments in the comment section—

22  some of whom offered to provide funding to pay for legal fees."  (Doc. 63-1 at 14.)  Defendant's

23  use of this item does not offer an indication of what information was in the public realm at the

24  time, but instead appears to be used to prove that there were offers to provide funding.  As this

25  cannot be accurately and readily determined from sources whose accuracy cannot reasonably be

26  questioned, the Court DENIES Defendant's Request for Judicial Notice No. 6.  *See* Fed. R. Evid.

27  201(b).

28          Finally, Defendant requests in a footnote that the Counterclaim Video be incorporated by

reference for purposes of Defendant's motion.  (Doc. 63-1 at 11 n.1.)  Plaintiffs do not oppose

this request.  (*See* Doc. 67.)  Exhibit B to Plaintiffs' Third Amended Complaint consists of the

video and preserved copy of the loading page for Defendant's "Markus Heitkoetter/Rockwell

Trading Sued for False Advertising: 7 Shocking Allegations" YouTube Counterclaim Video,

published April 16, 2023, also available at https://www.youtube.com/watch?v=gfmkpNJE03A.

(Doc. 60 ¶ 59) ("A preserved copy of the loading page for this new video is attached hereto as

Exhibit B. The video will be produced lodged with the Court as part of Exhibit B."); Doc. 84

(noting copy of Counterclaim Video has been lodged with the Court); Doc. 85 at 14-20

(preserved copy of the loading page for the Counterclaim Video).  The Court is permitted to rely

upon documents attached to the operative complaint in deciding a motion to dismiss.  *See,*

*generally*, Fed. R. Civ. P. 10(c)("A statement in a pleading may be adopted by reference

elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument

that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Gallagher v.*

*Philipps*, 563 F. Supp. 3d 1048, 1071 (S.D. Cal. 2021) (Incorporating 31 articles written by

defendant in evaluating defendant's motion to strike and motion to dismiss, as "Plaintiff relies on

these articles to form the basis of his claims against Defendant, and therefore the Court concludes

that it is appropriate to incorporate by reference those 31 articles.").  Because the Counterclaim

Video and loading page copy are attached to the operative Third Amended Complaint, the

Counterclaim Video and loading page are incorporated into the Third Amended Complaint.  As to

matters filed on the Court's docket, including exhibits to the Third Amended Complaint, the

request for judicial notice is unnecessary and is DENIED as moot.  *See, e.g.*, *McKeon v. Cent.*

*Valley Cmty. Sports Found.*, No. 1:18-cv-00358-BAM, 2021 WL 5450276, at *1 n.1 (E.D. Cal.

Nov. 22, 2021); *Harris by & through Lester v. Cty. of Sacramento*, No. 2:17-CV-02346- MCE-

AC, 2018 WL 3752176, at *3 n.3 (E.D. Cal. Aug. 8, 2018) (finding request for judicial notice of a

pleading on the court's own docket unnecessary).

## IV.    DISCUSSION

Defendant seeks dismissal of certain aspects of Plaintiffs' claims related to Defendant's

counterclaim and Counterclaim Video statements.  (Doc. 63-1.)  Defendant argues that these

1   claims should be dismissed because: (A) Defendant's Counterclaim Video statements and

2   counterclaim are protected activity under California's Anti-SLAPP Statute; (B) Defendant's

3   Counterclaim Video statements and counterclaim are protected by the litigation privilege pursuant

4   to California Civil Code Section 47; (C) Defendant's Counterclaim Video statements and

5   counterclaim are protected by the fair and true report privilege pursuant to California Civil Code

6   Section 47; (D) no reasonable person would deduce the implications alleged by Plaintiffs related

7   to the misspelling of Plaintiff Heitkoetter's name in Plaintiffs' defamation by implication claim;

8   (E) Plaintiffs cannot plead an abuse of process claim; and (F) Plaintiffs have not pled their claims

9   with adequate specificity.  (Doc. 63-1.)  Plaintiffs respond that Defendant's Counterclaim Video

10  and Defendant's counterclaim fall within the Commercial Speech Exemption to the Anti-SLAPP

11  Statute, the litigation privilege and fair and true report privilege do not shield Defendant's

12  statements, and Plaintiffs have properly pled their defamation by implication, abuse of process,

13  and derivative claims.  (Doc. 67.)  Plaintiffs further request that the Court find Defendant's

14  motion meritless and find that Plaintiffs are entitled to reasonable attorneys' fees.  (*Id.* at 23.)

15      **A. The California Anti-SLAPP Statute**

16      Defendant first argues that Plaintiffs' claims regarding Defendant's Counterclaim Video

17  statements are barred by the California Anti-SLAPP Statute.  (Doc. 63-1 at 7-13.)  Defendant

18  further "requests the Court award attorneys' fees and costs to Mr. Domm pursuant to California's

19  anti-SLAPP statute's, attorneys' fees clause for prevailing defendants."  (*Id.* at 15.)  Plaintiffs

20  respond that Defendant's Counterclaim Video statements and Defendant's counterclaim itself fall

21  within the Commercial Speech Exemption to the California Anti-SLAPP Statute.  (Doc. 67 at 8-

22  15.)

23      **1. Legal Standard for California Anti-SLAPP Statute & Commercial Speech**

24          **Exemption**

25      Section 425.16 of the California Code of Civil Procedure "provides for the pre-trial

26  dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or

27  SLAPPs, that 'masquerade as ordinary lawsuits' but are intended to deter ordinary people 'from

28  exercising their political or legal rights or to punish them for doing so.'"  *Makaeff v. Trump Univ.,*

1  *LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (quoting *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir.

2  2003) (some internal quotation marks omitted); *see also Metabolife Int'l, Inc. v. Wornick*, 264

3  F.3d 832, 839 (9th Cir. 2001) ("The anti-SLAPP statute was enacted to allow early dismissal of

4  meritless first amendment cases aimed at chilling expression through costly, time-consuming

5  litigation.")

6         Section 425.17 of the California Code of Civil Procedure sets forth exemptions from

7  section 425.16, including a "commercial speech exemption," which provides as follows:

> (c) Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services, including, but not limited to, insurance, securities, or financial instruments, arising from any statement or conduct by that person if both of the following conditions exist:
>
> (1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services.
>
> (2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer, or the statement or conduct arose out of or within the context of a regulatory approval process, proceeding, or investigation, except where the statement or conduct was made by a telephone corporation in the course of a proceeding before the California Public Utilities Commission and is the subject of a lawsuit brought by a competitor, notwithstanding that the conduct or statement concerns an important public issue.

Cal. Code Civ. Proc. § 425.17(c).

       "If a complaint satisfies the provisions of the [commercial speech exemption in section

425.17, subdivision (c)], it may not be attacked under the anti-SLAPP statute." *Xu v. Huang*, 73

Cal. App. 5th 802, 813 (2021) (citing *Club Members for an Honest Election v. Sierra Club*, 45

Cal. 4th 309, 316 (2008)).  In other words, "[a] defendant who makes statements about a business

competitor's goods or services to advance the defendant's business cannot use the anti-SLAPP

10

1    statute against causes of action arising from those statements." *Id.* (citations omitted).

2           The applicability of the commercial speech exemption is a "threshold issue" to be

3    addressed "prior to examining the applicability of section 425.16," and if the exemption is found

4    to apply, the "special motion to strike should [be] denied without reaching the merits of the

5    motion." *People ex rel. Strathmann v. Acacia Rsch. Corp.*, 210 Cal. App. 4th 487, 498 (2012)

6    (addressing the "public interest exception" in section 425.17(b)); *Xu*, 73 Cal. App. 5th at 813

7    (applying *Strathmann* in the context of the commercial speech exemption in section 425.17(c)).

8           A cause of action is exempt from anti-SLAPP law by virtue of the commercial speech

9    exemption in section 425.17 when:

> (1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services;
>
> (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services;
>
> (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and
>
> (4) the intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer.

18   *Abrahamson v. Berkley*, No. 1:16-cv-0348-AWI-BAM, 2016 WL 8673060, at *14 (E.D. Cal.

19   Sept. 2, 2016) (Ishii, J.) (citing *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 30 (2010) and

20   *Hawran v. Hixson*, 209 Cal. App. 4th 256, 271 (2012)).

21           **2.   The Commercial Speech Exemption Applies to Defendant's Counterclaim**

22                 **Video Statements**

23           Examining the first and fourth *Abrahamson* factors of the speaker and the audience,

24   Plaintiffs' Third Amended Complaint alleges that Plaintiffs offer "education services and

25   programs for anyone interested in investing and trading," and that Defendant is "an options trader

26   who markets and sells a course in options trading, similar to that offered by Plaintiffs." (Doc. 60

27   ¶¶ 15, 17.)  Similarly, Plaintiffs allege that "Defendant maintains a YouTube channel to market

28   his services" and that "[p]art of Defendant[']s strategy to increase his exposure, and thus increase

1    his sales, includes 'reviewing' the services and strategies of other companies which are larger and

2    more well-established than Defendant." (*Id.* ¶ 18.)  Plaintiffs further allege that by "'reviewing'

3    these other companies, Defendant's YouTube videos will appear as 'suggestions' for viewers of

4    the other companies." (*Id.*)  Defendant therefore satisfies the first and fourth prongs, as he is

5    alleged to be engaged in the business of selling or leasing goods or services, and Defendant's

6    audience is alleged to be potential customers of those other companies.

7           Examining the second and third *Abrahamson* factors, Plaintiffs allege that, in his

8    Counterclaim Video, "Defendant framed Plaintiffs' request for a protective order as Plaintiffs'

9    use of legal process to hide information from consumers that should be shared and uses that

10   assertion as a segue to promote his own educational services." (*Id.* ¶ 63.)  Plaintiffs also allege

11   that in the Counterclaim Video, Defendant falsely insinuates that Plaintiffs utilize deceptive

12   litigation tactics when Defendant "alleges that Plaintiff Heitkoetter deceived his viewers because

13   he did not disclose the additional deposit and suggests that Plaintiff Heitkoetter deposited more

14   than $250,000 into that account," and "suggests that Plaintiff Heitkoetter purposefully misspelled

15   his name in the pleadings to avoid detection on the public docket." (*Id.* ¶¶ 67-70.)  Plaintiffs

16   further allege that Defendant "wanted to continue to share this discovery information because it

17   brings increased attention to his YouTube Channel and, thereby, the products and services which

18   he sells" and "to gain further popularity and to continue to enrich himself through the

19   besmirching of Plaintiffs' good name." (*Id.*  ¶¶ 76, 78.)  Defendant's statements in the

20   Counterclaim Video therefore satisfy the second and third *Abrahamson* factors, as he is alleged to

21   have made representations of fact about a competitor's business operations to promote or secure

22   sales of goods or services.  Defendant's Counterclaim Video statements therefore satisfy the four

23   factors outlined in *Abrahamson*, and Plaintiffs' claims regarding the Counterclaim Video are thus

24   exempt from the California Anti-SLAPP Statute by virtue of the commercial speech exemption.

25          Defendant argues that the commercial speech exemption does not apply because his

26   statements are not comparative advertising.  (Doc. 70 at 2-5.)  Defendant contends that the speech

27   in the Counterclaim Video is not comparative advertising or a business maneuver, and is instead

28   the repetition of allegations in a publicly-filed complaint.  (*Id.* at 2.)  Plaintiffs, in turn, contend

1    that Defendant's reviews and discussion of competitors "allows him to present himself as a 'foil'

2    or a superior alternative to the persons he reviews or discusses."  (Doc. 67 at 11.)

3           The California Supreme Court has held that "section 425.17, subdivision (c) and

4    subsequent case law indicate that the provision exempts 'only a subset of commercial speech'—

5    specifically, comparative advertising." *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133,

6    147, 439 P.3d 1156, 1163 (2019) (citing *All One God Faith, Inc. v. Organic & Sustainable Indus.*

7    *Standards, Inc.*, 107 Cal. Rptr. 3d 861, 886 (2010)).  In a similar case where a district court

8    discussed the application of the commercial speech exemption to the anti-SLAPP statute, the

9    plaintiff sent its complaint to customer physicians and laboratories to promote the sale of its

10   product and provide its opinion of the competitor defendant's product.  *Quidel Corp. v. Siemens*

11   *Med. Sols. USA, Inc.*, No. 16-CV-3059-BAS-AGS, 2019 WL 4747671, at *7 (S.D. Cal. Sept. 27,

12   2019).  In *Quidel*, the plaintiff informed customers of the complaint against the defendant,

13   including allegations of false advertising regarding defendant's product.  *Id.*  The district court

14   found that the "purpose of the letter was to encourage the clients not to carry or promote

15   [defendant's product] and therefore to improve [plaintiff's] relationship and business with the

16   clients."  *Id.*  The district court accordingly held that plaintiff's republishing of the complaint and

17   making "statements to non-participating third parties falls under the exception of section 425.17,

18   and therefore does not fall under anti-SLAPP coverage." *Id.*

19          Defendant's Counterclaim Video statements similarly fall under the commercial speech

20   exemption and do not qualify for Anti-SLAPP Statute coverage.  As with the parties in *Quidel*,

21   Plaintiffs and Defendant in this matter are alleged to be offering similar trading services and

22   programs.  (Doc. 60 ¶¶ 15, 17.)  And Defendant here is alleged to be disseminating his

23   counterclaim against Plaintiffs to promote his own products and services.  (*Id*. ¶¶ 63, 76-78.)

24   Defendant's contentions that this is not comparative advertising, and that Defendant is acting as a

25   litigant rather than competitor, are thus unavailing.  Because Defendant is allegedly broadcasting

26   his counterclaim for the purpose of promoting his own products and services in place of

27   Plaintiffs' products and services, the commercial speech exemption applies, and Defendant's

28   Counterclaim Video statements do not qualify for Anti-SLAPP coverage.

1   Accordingly, Defendant's motion to strike based upon Anti-SLAPP Statute protection is

2   DENIED.

3   **3.   Defendant's Request for Attorney's Fees is Denied**

4   Defendant "requests the Court award attorneys' fees and costs to Mr. Domm pursuant to

5   California's anti-SLAPP statute's, attorneys' fees clause for prevailing defendants." (*Id.* at 15.)

6   However, as Defendant does not provide further authority or briefing on the issue of attorneys'

7   fees, and the Anti-SLAPP Statute does not apply here, Defendant's request for attorneys' fees is

8   DENIED.

9   **B.  The Litigation Privilege Applies to Portions of Defendant's Counterclaim Video**

10   Defendant next argues that his counterclaim and Counterclaim Video are protected by the

11   litigation privilege. (Doc. 63-1 at 13-15.) Plaintiffs, in turn, argue that the litigation privilege

12   does not apply because Defendant's out-of-court statements were not made in judicial

13   proceedings, nor made to the type of limited audience of interested parties that the litigation

14   privilege embraces. (Doc. 67 at 15-18.)

15   California Civil Code Section 47(b) sets forth the litigation privilege, and states that the

16   privileged publication or broadcast is one made in any "judicial proceeding." Cal. Civ. Code §

17   47(b)(2). "The usual formulation is that the privilege applies to any communication (1) made in

18   judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3)

19   to achieve the objects of the litigation; and (4) that have some connection or logical relation to the

20   action." *Silberg v. Anderson,* 50 Cal. 3d 205, 212 (1990), as modified (Mar. 12, 1990) (citations

21   omitted). "The purposes of section 47, subdivision (b), are to afford litigants and witnesses free

22   access to the courts without fear of being harassed subsequently by derivative tort actions, to

23   encourage open channels of communication and zealous advocacy, to promote complete and

24   truthful testimony, to give finality to judgments, and to avoid unending litigation." *Jacob B. v.*

25   *Cnty. of Shasta,* 40 Cal. 4th 948, 955 (2007) (quoting *Rusheen v. Cohen,* 37 Cal. 4th 1048, 1063,

26   (2006)). "To further these purposes, the privilege has been broadly applied." *Id.* "Although

27   originally enacted with reference to defamation, the privilege is now held applicable to any

28   communication, whether or not it amounts to a publication, and all torts except malicious

14

1  prosecution." *Silberg*, 50 Cal. 3d at 212 (citations omitted).

2      As to the first and second *Silberg* prongs, Defendant's counterclaim is a statement made in

3  judicial proceedings by a litigant.  The California Supreme Court has held that the privilege

4  applies not just to statements made during trial, but also "to any publication [required or

5  permitted] by law in the course of a judicial proceeding to achieve the objects of the litigation,

6  even though the publication is made outside the courtroom and no function of the court or its

7  officers is invoked." *Albertson v. Raboff,* 46 Cal. 2d 375, 381 (1956); *Castaline v. Aaron Mueller*

8  *Arts*, No. C09-02543 CRB, 2010 WL 583944, at *4 (N.D. Cal. Feb. 16, 2010) (finding plaintiff's

9  sending of a complaint to distributors satisfied the first *Silberg* prong "because the Complaint

10  relates to a judicial proceeding even though it was not made in the proceeding per se"); *Quidel*,

11  612 F. Supp. 3d at 1140–41 (finding first *Silberg* prong satisfied because plaintiff's "acts of

12  notifying potential customers that it believes [defendant's product] is falsely advertised serves the

13  'objects of the litigation' of preventing the sale of falsely advertised products.").  As with the

14  complaint in *Quidel*, Defendant's counterclaim is a publication permitted by law in judicial

15  proceedings, satisfying the first prong.  (Doc. 46.)  Additionally, Defendant is a litigant in this

16  matter, satisfying the second prong.  The first two *Silberg* prongs are thus satisfied.

17      Regarding the third and fourth *Silberg* prongs, the "requirement that the communication

18  be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that

19  the communication be connected with, or have some logical relation to, the action, i.e., that it not

20  be extraneous to the action." *Silberg*, 50 Cal. 3d at 219–20.  In other words, the third prong is

21  simply part of the fourth prong. *Quidel*, 612 F. Supp. 3d at 1141.  The California Supreme Court

22  has noted that a "good example of an application of the principle is found in the cases holding

23  that a statement made in a judicial proceeding is not privileged unless it has some reasonable

24  relevancy to the subject matter of the action." *Silberg*, 50 Cal. 3d at 220.

25      In examining the third and fourth prong when parties have disclosed litigation-related

26  information to non-parties, courts have examined the non-participants' interest in the litigation.

27  The Ninth Circuit has noted that the litigation privilege "extends to communications regarding

28  such judicial proceedings made to people with 'a substantial interest in the outcome of the

1   pending litigation.'" *Youngevity Int'l Corp. v. Andreoli*, 749 F. App'x 634, 635 (9th Cir. 2019).

2   In *Youngevity*, where the plaintiff had republished the Verified Complaint and summarized the

3   substance of the Verified Complaint in a press release, the Ninth Circuit held that "republication

4   of the Verified Complaint and the dissemination of the Youngevity press release to its distributors

5   and the marketing community (which had such a substantial interest) constitute protected

6   speech," and defendant therefore could not prevail on counterclaims relating to that

7   dissemination.  *Id.*

8        In *Quidel*, the plaintiff sent its complaint to customers to promote the sale of its product

9   and provide its opinion of the competitor defendant's product.  *Quidel*, 612 F. Supp. 3d at 1142.

10   There, the district court noted that because plaintiff alleged false advertising of defendant's

11   products, the purchasers of defendant's products would have a substantial interest in the litigation.

12   *Id.*  Because the non-parties had a substantial interest in the litigation and the other *Silberg* prongs

13   were met, the district court granted plaintiff's motion for summary judgment as to defendant's

14   abuse of process counterclaim.  *Id.; see also Epistar Corp. v. Philips Lumileds Lighting Co., LLC*,

15   No. C 07-5194 CW, 2008 WL 3930030, at *2, *6 (N.D. Cal. Aug. 26, 2008) (finding the

16   litigation privilege applied and plaintiff's customers had a substantial interest where defendant

17   sent allegedly false and misleading letters regarding International Trade Commission

18   infringement findings to plaintiff's existing and potential customers who had purchased plaintiff's

19   products, incorporated them into their own products, and intended to import them to the United

20   States); *Tri-Star Elecs. Int'l, Inc. v. Preci-Dip Durtal SA*, No. CV0804226GAFAJWX, 2011 WL

21   13176071, at *8 (C.D. Cal. May 27, 2011) (dismissing defendant's counterclaims where plaintiff

22   sent a letter to defendant's non-litigant customers and distributors because "they could also 'be

23   exposed to potential liability for patent ... infringement depending on the outcome of the pending

24   litigation,' [and therefore] they have a substantial interest in the outcome of the pending

25   litigation.").

26        Here, Defendant's dissemination of counterclaims in the Counterclaim Video to interested

27   parties who are potential customers of Plaintiffs is connected to the action and serves the objects

28   of litigation.  Plaintiffs allege that in reviewing other companies, "Defendant's YouTube videos

will appear as 'suggestions' for viewers of the other companies." (Doc. 60 ¶ 18.) Defendant's

counterclaims allege false advertising and violations of California Unfair Competition Law.

(Doc. 46.)  As with the distribution of false advertising allegations in *Quidel*, Defendant's

counterclaim and portions of Defendant's Counterclaim Video explain Defendant's false

advertising allegations to people who are interested in Plaintiffs' products.  Reading Plaintiffs'

Third Amended Complaint in context, Plaintiffs allege that Defendant's Counterclaim Video was

aimed at Plaintiffs' customers or potential customers and was intended to apprise them of

Defendant's false advertising allegations.  (*See* Doc. 60 ¶¶ 4, 18.)  Furthermore, when Defendant

discusses his counterclaim in the Counterclaim Video, he largely reads the claims verbatim.

(Doc. 84, Counterclaim Video at Timestamp 5:50-17:55.)  This reading and commenting upon the

counterclaim is sufficiently connected to this action to be protected by the litigation privilege.

*See Silberg*, 50 Cal. 3d at 220 ("a statement made in a judicial proceeding is not privileged unless

it has some reasonable relevancy to the subject matter of the action.").  Because Defendant's

statements regarding his counterclaim in the Counterclaim Video were aimed at non-participants

with a substantial interest in the litigation and had a reasonable relevance to the action, the third

and fourth *Silberg* prongs are met.  Therefore, Defendant's statements regarding his counterclaim

(Doc. 84, Counterclaim Video at Timestamp 5:50-17:55) are protected by the litigation privilege.

However, Defendant's Counterclaim Video does not solely consist of Defendant

discussing the allegations in his Counterclaim, but also includes Defendant's commentary on

other matters.  The California Supreme Court has held that a "statement made in a judicial

proceeding is not privileged unless it has some reasonable relevancy to the subject matter of the

action." *Silberg*, 50 Cal. 3d at 220.  The portions of the video in which Defendant discusses his

own services; discusses his reviews of other financial trading educational programs; discusses

documents "in the public record" obtained through discovery; discusses another case in which

Plaintiff Heitkoetter's name is spelled differently; and discusses his attorney's efforts and

principles of speech are insufficiently connected to this action and to the non-participants'

substantial interest.  (*See* Doc. 84, Counterclaim Video at Timestamp 0:00-5:49, 17:55-19:42,

19:43-21:54).  The speech in these portions of the Counterclaim Video is therefore not protected

1    by the litigation privilege.

2          In sum, as the *Silberg* prongs are met as to Defendant's discussion of his counterclaim in

3    the Counterclaim Video, the litigation privilege applies to Defendant's statements explaining his

4    counterclaim in the Counterclaim Video.  (Doc. 84, Counterclaim Video at Timestamp 5:50-

5    17:55.)  However, the remainder of Defendant's statements in the video, in which Defendant

6    discusses his own services; discusses his reviews of other financial trading educational programs;

7    discusses documents "in the public record" obtained during discovery; discusses another case in

8    which Plaintiff Heitkoetter's name is spelled differently; and discusses his attorney's efforts in

9    this matter (*Id.* at Timestamp 0:00-5:49, 17:55-19:42, 19:43-21:54) are not protected by the

10   litigation privilege.

11         **C.  The Fair and True Report Privilege Applies to Portions of Defendant's**

12              **Counterclaim Video**

13         Defendant contends that the fair and true report privilege applies here, as the

14   Counterclaim Video is a fair and true report of public documents.  (Doc. 63-1 at 14-15.)

15   Plaintiffs respond that the fair report privilege should not apply to the Counterclaim Video

16   because Defendant provides commentary in addition to reading the counterclaim verbatim; the

17   fair and true report privilege only protects statements to the extent a reasonable viewer would

18   understand them as communications about the legal proceedings themselves, and Defendant fails

19   to meet his burden of establishing that his YouTube Channel, is a "public journal."  (Doc. 67 at

20   18-20.)

21         California Civil Code Section 47(d) sets forth the fair and true report privilege.  Cal. Civ.

22   Code § 47(d).  "The fair report privilege 'confers an absolute privilege on any fair and true report

23   in, or a communication to, a public journal of a judicial proceeding, or anything said in the course

24   thereof.'"  *Healthsmart Pac., Inc. v. Kabateck*, 7 Cal. App. 5th 416, 431, as modified (Jan. 10,

25   2017) (citing *Sipple v. Foundation For Nat. Progress* 71 Cal. App. 4th 226, 240 (1999)).  "The

26   privilege applies to fair and true reports 'of anything said in the course' of a 'judicial ...

27   proceeding.'"  *Id.* at 432, as modified (Jan. 10, 2017) (citing Cal. Civ. Code, § 47(d).)  "California

28   courts have construed the phrase, "judicial proceeding," broadly to include the filing of a

1  complaint." *Id.* (citations omitted). "'Fair and true' in this context does not refer to the truth or

2  accuracy of the matters asserted in the judicial proceedings, but rather to the accuracy of the

3  challenged statements with respect to what occurred in the judicial proceedings." *Id.* at 434. *Id.*

4  at 434. The Ninth Circuit has clarified that a "report is 'fair and true' if it reflects 'the substance,

5  the gist, the sting of the libelous charge.'" *Crane v. Arizona Republic*, 972 F.2d 1511, 1519 (9th

6  Cir. 1992); *see Argentieri v. Zuckerberg*, 8 Cal. App. 5th 768, 787-88 (2017) ("The defendant is

7  entitled to a certain degree of flexibility/literary license... such that the privilege will apply even if

8  there is a slight inaccuracy in details"). "The news article need not track verbatim the underlying

9  proceeding. Only if the deviation is of such a 'substantial character' that it 'produce[s] a different

10 effect' on the reader will the privilege be suspended." *Carver v. Bonds*, 135 Cal. App. 4th 328,

11 351, 37 Cal. Rptr. 3d 480, 499 (2005) (citing *Crane*, 972 F.2d at 1519).

12      First, Defendant's counterclaim constitutes a judicial proceeding. *Healthsmart*, 7 Cal.

13 App. 5th at 432 ("California courts have construed the phrase, "judicial proceeding," broadly to

14 include the filing of a complaint."). Second, the portions of Defendant's Counterclaim Video

15 discussing Defendant's counterclaim (Doc. 84, Counterclaim Video at Timestamp 5:50-17:55)

16 constitute "fair and true" reporting, as Defendant primarily reads from his counterclaim with

17 minimal additional commentary and notes that these are allegations. *See Healthsmart*, 7 Cal.

18 App. 5th at 435 (holding that attorney defendants "are protected from liability under the fair

19 report privilege in informing the news media" of allegations, but "are not protected if they

20 informed the media that such facts were true."); *Crane*, 972 F.2d at 1519; *see Argentieri*, 8 Cal.

21 App. 5th at 787-88;

22      Third, the privilege only covers the portions of the Counterclaim Video that represent

23 news coverage. California courts have noted that news articles "need not track verbatim the

24 underlying proceeding," but the privilege is suspended where the "deviation is of such a

25 'substantial character' that it 'produce[s] a different effect." *Carver*, 135 Cal. App. 4th at 351

26 (citing *Crane*, 972 F.2d at 1519). Defendant argues that the "entire Counterclaim Video is a fair

27 and true report of public documents and nothing more." (Doc. 63-1 at 15.) However,

28 Defendant's Counterclaim Video consists of several segments that move between reports and

1    tangential commentary.  For instance, Defendant's opening discussion regarding his own services

2    and reviews, Defendant's discussion of documents related to Plaintiff Heitkoetter, discussion of

3    another case in which Plaintiff Heitkoetter's name is spelled differently, and discussion of his

4    attorney's efforts do not constitute reporting on his counterclaim.  (Doc. 84, Counterclaim Video

5    at Timestamp 0:00-5:49, 17:55-19:42, 19:43-21:54.)  These portions deviate substantially from

6    reporting and produce a different effect, which suspended the fair and true report privilege.

7    *Carver*, 135 Cal. App. 4th at 351.  Nevertheless, the segment in which Defendant primarily reads

8    from his counterclaim, offers minimal other commentary, and continually notes that these are

9    allegations qualifies as fair and true reporting of his counterclaim. (Doc. 84, Counterclaim Video

10   at Timestamp 5:50-17:55.)  Accordingly, Defendant's statements in his Counterclaim Video are

11   privileged under the fair and true report privilege solely for the duration of Defendant's

12   discussion of eight allegations from his counterclaim (Doc. 84, Counterclaim Video at Timestamp

13   5:50-17:55), in which he read from his Counterclaim while showing either the Counterclaim or

14   related images.

15       Plaintiffs argue that the litigation privilege should not apply because Defendant offers

16   commentary and subjective discussion rather than objective coverage.  (Doc. 67 at 19.)  However,

17   courts have noted that the "defendant is entitled to a certain degree of flexibility/literary license ...

18   such that the privilege will apply even if there is a slight inaccuracy in details."  *Argentieri*, 8 Cal.

19   5th at 787-88; *Carver*, 135 Cal. App. 4th at 351 (coverage "need not track verbatim the

20   underlying proceeding" for the privilege to apply).  Furthermore, the Court notes that the fair

21   and true report privilege applies only to the portions of the Counterclaim Video in which

22   Defendant did not substantially deviate from ordinary coverage of his counterclaim.

23       Plaintiffs further argue that the litigation privilege should not apply because Defendant

24   fails to meet the burden of establishing that his YouTube Channel is a "public journal."  (Doc. 67

25   at 19.)  Defendant argues that Defendant's YouTube Channel should be treated as a "public

26   journal," as "facts, commentary, and news are obtained more and more from YouTube.com

27   channels and creators as less people rely on the local news for information."  (Doc. 70 at 8.)

28   Neither Plaintiffs nor Defendant locate authority defining what constitutes a "public journal," and

1    Defendant states that "caselaw regarding what is or is not a 'public journal' is virtually

2    nonexistent from counsel for defendant's research." (*Id.*)  Given the lack of authority clarifying

3    that a YouTube channel does not constitute a "public journal," the Court cannot conclude that

4    Defendant's YouTube channel fails to constitute a "public journal" for the purposes of the fair

5    and true report privilege.

6           Plaintiffs also argue that because reasonable minds could differ regarding Defendant's

7    comments on the allegations, the fair and true report privilege should not be applied at the motion

8    to strike stage.  (Doc. 67 at 19.)  "In general, whether a privileged occasion exists within the

9    meaning of Civil Code section 47, subdivision (d), is for the court to decide; whether the report of

10   the official proceedings itself is 'fair and true,' provided reasonable minds could disagree as to

11   the effect of the communication on the average reader or listener, is a question of fact for the

12   jury." *J-M Mfg. Co. v. Phillips & Cohen LLP*, 247 Cal. App. 4th 87, 98 (2016) (reviewing a

13   summary judgment motion).  California Courts have also noted that "this decision is one of law

14   when… there is no dispute as to what occurred in the judicial proceeding reported upon or as to

15   what was contained in the report." *McClatchy Newspapers, Inc. v. Superior Ct.*, 189 Cal. App. 3d

16   961, 976 (Ct. App. 1987) (reviewing anti-SLAPP motion to strike).  In deciding whether the fair

17   and true report applies at the motion to strike or motion to dismiss stage, courts must therefore

18   examine whether there is any dispute regarding the underlying judicial proceeding or report.  In a

19   recent case, a district court examined whether the fair and true report privilege applied on an anti-

20   SLAPP motion to strike and motion to dismiss, and applied the fair and true report privilege

21   where report statements were undisputed and the underlying charge sheets were undisputed.

22   *Gallagher*, 563 F. Supp. 3d at 1089 ("It is undisputed that Plaintiff was charged with shooting an

23   unarmed girl and at least one witness made this claim; therefore, the fair and true report privilege

24   bars this claim."); *see also Blatt v. Pambakian*, No. 20-55084, 2021 WL 4352329, at *1 (9th Cir.

25   Sept. 24, 2021) (Ninth Circuit concluding that a district court erred in not applying the fair and

26   true report privilege in evaluating an anti-SLAPP motion and noting that "the 'average person

27   [reading] the report in its entirety would reasonably understand that [defendant] was referring' to

28   the allegations in the Valuation Complaint.").

1    Here, the parties do not dispute as to what is contained in Defendant's Counterclaim.

2 (Doc. 46.)  Furthermore, while the parties characterize the Counterclaim Video differently, there

3 is no dispute as to the contents of Defendant's Counterclaim Video, as it is cited by Defendant in

4 his briefing and was incorporated into Plaintiffs' operative Third Amended Complaint as part of

5 Exhibit B.  (Doc. 60 ¶ 59; Doc. 63-1 at 11; Doc. 84, Exhibit B, Counterclaim Video.)  Because

6 there is no dispute as to the judicial proceeding or as to what was contained in the report, the

7 question of whether to apply the privilege is a matter of law.  *McClatchy*, 189 Cal. App. 3d at 976

8 (citing *Kilgore v. Younger*, 30 Cal. 3d 770, 777, 640 P.2d 793, 797 (1982)).  Accordingly,

9 Plaintiffs' suggestion that the fair and true report privilege may not be applied in deciding this

10 motion is incorrect.

11    Plaintiffs further argue that the fair and true report privilege "only protects statements to

12 the extent a reasonable viewer would understand them as communications about the legal

13 proceedings themselves," citing *Healthsmart*, and contend that no reasonable viewer would

14 believe Defendant is communicating mere allegations.  (Doc. 67 at 19.)  However, Defendant's

15 frequent reminders in his Counterclaim Video that these are the allegations from his counterclaim

16 and display of the counterclaim align with the attorney defendants' actions in *Healthsmart*.  In

17 *Healthsmart*, an attorney described allegations while the complaint was shown on a television

18 program and a reporter continued to note that these were allegations.  *Healthsmart*, 7 Cal. App.

19 5th at 422.  The court noted that although some individual statements might be misunderstood as

20 facts rather than allegations, when viewed in their entirety, the only reasonable conclusion the

21 audience could draw was that these were the attorney's allegations.  *Id.* at 436.  As in

22 *Healthsmart*, the reasonable conclusion to be drawn from Defendant's recurrent statements in the

23 Counterclaim Video that he is discussing allegations from his counterclaim is that Defendant is

24 describing allegations from his counterclaim.  (*See* Doc. 84, Counterclaim Video at Timestamp

25 5:50-17:55.)  Plaintiffs' argument is therefore unavailing, and the fair and true report privilege

26 applies to Defendant's reporting on his counterclaim.

27    In total, Defendant's statements regarding his counterclaim in the Counterclaim Video are

28 privileged under the litigation privilege and fair and true report privilege when they principally

22

discuss his counterclaim (*e.g.*, Doc. 84, Counterclaim Video at Timestamp 5:50-17:55).  These

absolute privileges protect that portion of Defendant's speech from Plaintiffs' claims.

Accordingly, the Court GRANTS Defendant's motion to dismiss as to Plaintiffs' claims regarding

Defendant's explanation of his counterclaim in the Counterclaim Video (*e.g.*, Doc. 84,

Counterclaim Video at Timestamp 5:50-17:55) without leave to amend.

### D.  Plaintiffs Allege a Plausible Defamation by Implication Claim

Defendant next argues that Plaintiffs' claim for defamation by implication as to the

misspelling of Plaintiff Heitkoetter's name should be dismissed.  (Doc. 63-1 at 15-16.)  Plaintiffs'

Third Amended Complaint alleges that, "at the 18:37 timestamp [in the Counterclaim Video],

Defendant discusses a lawsuit filed by Plaintiffs in Texas and suggests that Plaintiff Heitkoetter

purposefully misspelled his name in the pleadings to avoid detection on the public docket."  (Doc.

60 ¶ 68.)  Plaintiffs further allege that the "insinuation is demonstrably false, as the misspelling

was made in error, and Plaintiff Rockwell Trading Services, LLC is also a Plaintiff in that

action," but was made to insinuate "that Plaintiff employs deceptive litigation tactics."  (*Id.* ¶ 70-

71.)

Defendant argues that no reasonable person would deduce the implications Plaintiffs

allege.  (Doc. 63-1 at 15-16.)  Plaintiffs, in turn, contend that Defendant mischaracterizes the

statement in the Counterclaim Video and that a reasonable person would view Defendant's

statement as alleging that Plaintiff Heitkoetter was the one to cause the misspelling and allegedly

intended concealment of his involvement in the lawsuit.  (Doc. 67 at 20-21.)

To state a claim for defamation by implication under California law, a plaintiff must make

allegations showing that: "(1) his or her interpretation of [a] statement is reasonable; (2) the

implication or implications to be drawn convey defamatory facts, not opinions; (3) the challenged

implications are not 'substantially true'; and (4) the identified reasonable implications could also

be reasonably deemed defamatory."  *Issa v. Applegate*, 31 Cal. App. 5th 689, 707–08 (2019)

(quoting *Heller v. NBCUniversal, Inc.*, No. CV-15-09631-MWF-KS, 2016 WL 6583048, at *3-4

(C.D. Cal. June 29, 2016) (some internal quotation marks omitted).

Here, Defendant's statements in context invite an interpretation that Plaintiff Heitkoetter

is attempting to hide information.  During this portion of the Counterclaim Video, Defendant

diverges from recital of allegations in Defendant's counterclaim to comment upon parallel

litigation.  (*See* Doc. 46; Doc. 60; Doc. 84, Counterclaim Video at Timestamp 17:55-19:42.)

Defendant displayed the complaint in the separate case and provided brief background about that

case, then asked "Were you aware of this? I'm going to say it's likely you were possibly not

aware of this lawsuit."  (Doc. 84, Counterclaim Video at Timestamp 18:32-18:40.)  Defendant

discussed how Plaintiff Heitkoetter's name was spelled differently in the other action, and stated

"Wow. Markus's last name is spelled differently in this lawsuit compared to this lawsuit.  So

make sure when you want to look up this lawsuit you spell his name differently… if you ever

want to find this lawsuit."  (*Id.* at Timestamp 18:40-19:30.)  Defendant continued, "it's

interesting, isn't it? Did he spell his name differently? Did he just maybe make a mistake in court

about how to spell his last name? I guess. I guess so." (*Id.* at Timestamp 19:30-19:42.)  Combined

with the Counterclaim Video title, "Markus Heitkoetter / Rockwell Trading Sued for False

Advertising: 7 Shocking Allegations!", these statements invite a reasonable, factual inference that

Plaintiff Heitkoetter is attempting to hide information related to his business.  Such an implication

is defamatory in that it impugns Plaintiff Heitkoetter's truthfulness in business dealings.

*Melaleuca, Inc. v. Clark*, 66 Cal. App. 4th 1344, 1364 (1998) ("if the imputation fairly implied

that the plaintiff is dishonest or lacking in integrity or that he is perpetrating a fraud upon the

public by selling something that he knows to be defective, the personal defamation may be

found") (citing Restatement (Second) of Torts § 623A, comment g).  Defendant has not attempted

to establish that the implications are truthful.  (*See* Doc. 63-1 at 15-16; Doc. 70 at 9-10.)

Plaintiffs have therefore stated a plausible claim for defamation by implication.

Accordingly, the Court DENIES Defendant's motion to dismiss as to Plaintiffs'

defamation by implication claim related to the misspelling of Plaintiff Heitkoetter's name.

### E.  Plaintiffs Allege a Plausible Abuse of Process Claim

Defendant contends that Plaintiffs' abuse of process claim should be dismissed, as filing a

complaint is not grounds for an abuse of process claim; Defendant's counterclaim is protected

under the California Anti-SLAPP Statute and Litigation Privilege; and Defendant's counterclaim

was not filed for improper purposes.  (Doc. 63-1 at 16-20; Doc. 70 at 10-11.)  Plaintiffs, in turn, contend that "the purpose of the Counterclaim Video, and the Counterclaim itself, is to try and circumvent this Court's January 6, 2023 Order and the final February 16, 2023 Protective Order, by reframing the protected discovery information as operative facts supporting the Counterclaim and, thereafter, discussing 'the Counterclaim' in the Counterclaim Video."  (Doc. 60 ¶ 72; Doc. 67 at 21-23.)

"To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings."  *JSJ Ltd. Partnership v. Mehrban*, 205 Cal. App. 4th 1512, 1523 (2012) (citing *Rusheen*, 37 Cal. 4th at 1057).  "The relevant California authorities establish, however, that while a defendant's act of improperly instituting or maintaining an action may, in an appropriate case, give rise to a cause of action for malicious prosecution, the mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action."  *Id.*  "Abuse of process extends to procedures 'incident to litigation,' such as the abuse of the powers a litigant derives from the taking of a deposition as part of litigation-sanctioned discovery or other misuse of 'the tools the law affords litigants once they are in a lawsuit.'"  *Rassamni v. Fresno Auto Spa, Inc.*, No. 1:18-cv-00738-LJO-EPG, 2019 WL 2415316, at *2 (E.D. Cal. June 7, 2019) (citations omitted).

In this instance, Plaintiffs have alleged that Defendant is using the discovery process and filing of a counterclaim to circumvent the Court's protective order, which specifies that "[n]o party, either personally or through their agents or attorneys, shall publish to the Internet any 'Disclosure or Discovery Material,' a term which shall mean for purposes of this Order any documents or information that is generated, produced or disclosed in disclosures or discovery of this matter."  (Doc. 43).  For the first abuse of process element, Plaintiffs allege an ulterior motive in using the litigation process for a collateral goal, namely that "Defendant wanted to continue to share this discovery information because it brings increased attention to his YouTube Channel and, thereby, the products and services which he sells."  (Doc. 60 ¶ 75.)  For the second abuse of process element, Plaintiffs allege that Defendant uses his counterclaim and Counterclaim Video

1  to "circumvent this Court's January 6, 2023 Order and the final February 16, 2023 Protective

2  Order, by reframing the protected discovery information as operative facts supporting the

3  Counterclaim and, thereafter, discussing 'the Counterclaim' in the Counterclaim Video." (Doc.

4  60 ¶ 72.)  Plaintiffs have therefore stated a plausible abuse of process claim.

5          Defendant argues that filing a counterclaim alone does not give rise to an abuse of process

6  claim.  However, Defendant's alleged actions go beyond the mere filing of a counterclaim –

7  Plaintiffs allege that Defendant is utilizing the tools of discovery and counterclaim to further his

8  separate goal of increasing his profile and own business.  (Doc. 60 ¶¶ 72, 75.)  These alleged

9  actions demonstrate the misuse of "the tools the law affords litigants" contemplated in abuse of

10  process claims, and Defendant's characterization of his actions is therefore unavailing.  *See*

11  *Rassamni*, No. 1:18-cv-00738-LJO-EPG, 2019 WL 2415316, at *2.

12          Defendant further argues that the Anti-SLAPP Statute and litigation privilege protects his

13  counterclaim and Counterclaim Video statements.  However, as discussed *supra*, the commercial

14  speech exemption to the Anti-SLAPP statute applies here.  Additionally, the litigation privilege

15  solely protects the portion of Defendant's video in which Defendant discusses his counterclaim

16  allegations and does not encompass the portion of the video in which Defendant is discussing

17  documents related to Plaintiffs.  (*Compare* Doc. 84, Counterclaim Video at Timestamp 3:57-5:49;

18  5:50-17:55.)  Defendant's arguments regarding the application of these privileges to this claim are

19  therefore unavailing.

20          Accordingly, Defendant's motion to dismiss Plaintiffs' abuse of process claim is

21  DENIED.

22          **F.  Plaintiffs Sufficiently Pled Defamation by Implication and Derivative Causes of**

23          **Action**

24          Defendant contends that Plaintiffs have not adequately identified the underlying

25  defamatory statements and have therefore insufficiently pled their defamation by implication

26  claim and derivative causes of action.  (Doc. 63-1 at 20-21; Doc. 70 at 11.)  Plaintiffs respond that

27  the underlying statements were identified in Paragraphs 67, 69-71, and 79 of their Third

28  Amended Complaint and Defendant does not address why these identified statements merit

1   dismissal.  (Doc. 67 at 23.)

2       Under California pleading standards, the words of a defamatory statement "must be

3   specifically identified, if not pleaded verbatim, in the complaint."  *Gilbert v. Sykes*, 147 Cal. App.

4   4th 13, 53 (2007).  Pleading the "substance of the defamatory statement" is also adequate to state

5   a claim.  *Okun v. Superior Ct.*, 29 Cal. 3d 442, 458 (1981).  "Even under liberal federal pleading

6   standards, 'general allegations of the defamatory statements' which do not identify the substance

7   of what was said are insufficient."  *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1216

8   (C.D. Cal. 2004) (quoting *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303,

9   1314 (N.D. Cal. 1997)); *see also Qualls v. Regents of Univ. of California*, No. 1:13-cv-00649-

10  LJO, 2013 WL 4828587, at *8 (E.D. Cal. Sept. 6, 2013).

11      Here, Plaintiffs' Third Amended Complaint specifies that there is a false statement at the

12  11:29 timestamp in Defendant's Counterclaim Video, alleging that "Defendant alleges that

13  Plaintiff Heitkoetter deceived his viewers because he did not disclose the additional deposit and

14  suggests that Plaintiff Heitkoetter deposited more than $250,000 into that account."  (Doc. 60 ¶

15  67.)  Plaintiffs further allege that "Defendant conveniently fails to mention that Plaintiff

16  Heitkoetter had withdrawn significant sums of money from that account prior to any margin call

17  being issued."  (*Id.*)  Plaintiffs also allege that "Plaintiff had achieved his goal of withdrawing

18  money from that account on a monthly basis until June of 2021, and in fact had not deposited

19  more than $250,000 into that account. This statement is provably false by the very data being

20  'analyzed' by Defendant in this video."  (*Id.*)  Plaintiffs' Third Amended Complaint further

21  specifies another false statement at the 18:37 timestamp, alleging that Defendant "suggests that

22  Plaintiff Heitkoetter purposefully misspelled his name in the pleadings to avoid detection on the

23  public docket," which is "demonstrably false, as the misspelling was made in error, and Plaintiff

24  Rockwell Trading Services, LLC is also a Plaintiff in that action."  (Doc. 60 ¶¶ 68-69.)  While

25  Plaintiffs do not quote Defendant's allegedly defamatory speech verbatim, Plaintiffs sufficiently

26  paraphrase and identify the location of the allegedly defamatory speech.  Plaintiffs have therefore

27  sufficiently pled the underlying cause of action in their Third Amended Complaint.

28      Defendant cites state and federal cases to demonstrate that greater specificity is needed.

1    *See Titan Glob. LLC v. Organo Gold Int'l, Inc.*, No. 12-cv-2104-LHK, 2012 WL 6019285 (N.D.

2    Cal. Dec. 2, 2012); *Silicon Knights, Inc. v. Crystal Dynamics*, Inc., 983 F. Supp. 1303 (N.D. Cal.

3    1997); *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198 (C.D. Cal. 2004).  However, in *Titan*

4    *Global*, the court found the allegedly defamatory statements too general where plaintiff only

5    alleged "false and defamatory statements of fact about the character and business acumen of

6    [defendant's owner,] labeling him as an incompetent and dishonest business leader" and that

7    "[plaintiff's owner] is an incompetent and dishonest leader who will not reveal to his group the

8    elements necessary to be successful."  *Titan Glob. LLC*, No. 12-CV-2104-LHK, 2012 WL

9    6019285, at *11.  In *Jacobson*, the plaintiff argued "that he should not be required to plead the

10   alleged defamatory statement" and only offered to file the alleged defamatory statement under

11   seal.  *Jacobson*, 357 F. Supp. 2d at 1216.  In *Silicon Knights*, the plaintiff broadly alleged that

12   defendants made "false and defamatory statements to several of [plaintiff's] customers,

13   prospective customers, industry associates and the public regarding: (a) the quality and reliability

14   of [plaintiff's] products, (b) the competence and ability of [plaintiff's] employees, and (c)

15   [plaintiff's] cooperation and ability to work with customers, suppliers, or other persons in the

16   software industry."  *Silicon Knights*, 983 F. Supp. At 1313-14.  The allegedly defamatory

17   statements found to be overly broad or general in those cases are distinguishable from the

18   allegations in this matter.  Plaintiffs' Third Amended Complaint identified two statements that

19   Plaintiffs allege are false and defamatory based upon information relating to a specific margin

20   call and different spelling of Plaintiff Heitkoetter's name in other litigation.  (Doc. 60 ¶¶ 67-69.)

21   Plaintiffs further provided the locations of those statements within Defendant's Counterclaim

22   Video.  (*Id.*)  Defendant's reliance on those cases is therefore inapposite.

23          Accordingly, Defendant's motion to dismiss Plaintiff's defamation by implication and

24   derivative causes of action for insufficiently pled claims is DENIED.

25          **G.  Plaintiffs' Request for Attorneys' Fees is Denied**

26          In their opposition, Plaintiffs request that the Court find Defendant's "Motion is meritless

27   such that Plaintiffs are entitled to recover their reasonable attorney's fees in responding to said

28   Motion."  (Doc. 67 at 23.)  However, as Plaintiffs have not provided further authority or briefing

demonstrating they are entitled to attorneys' fees, this request is DENIED.

## V.     CONCLUSION AND ORDER

For the reasons stated, Defendant's motion to strike and motion to dismiss are GRANTED IN PART and DENIED IN PART as follows:

1. Defendant's motion to strike based on the California Anti-SLAPP Statute is DENIED;

2. Defendant's request for attorneys' fees based upon the California Anti-SLAPP Statute is DENIED;

3. Defendant's motion to dismiss based upon the litigation privilege and fair and true report privilege is GRANTED with respect to Defendant's statements regarding his counterclaim in the Counterclaim Video (*e.g.*, Doc. 84, Counterclaim Video at Timestamp 5:50-17:55) without leave to amend.

4. Defendant's motion to dismiss Plaintiffs' defamation by implication claim related to the misspelling of Plaintiff Heitkoetter's name is DENIED;

5. Defendant's motion to dismiss Plaintiffs' abuse of process claim is DENIED;

6. Defendant's motion to dismiss to dismiss for Plaintiffs' failure to insufficiently plead defamation by implication and derivative causes of action is DENIED.

Furthermore, Plaintiffs' request in their Opposition to Defendant's Motion to Strike and Motion to Dismiss that the Court find Defendant's motion meritless and that Plaintiffs are entitled to attorneys' fees (Doc. 67 at 23) is DENIED.

IT IS SO ORDERED.

Dated:   **January 29, 2024**            /s/ *Barbara A. McAuliffe*
                                         UNITED STATES MAGISTRATE JUDGE