UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARKUS HEITKOETTER, et al., | Case No. 1:22-cv-0368-KES-BAM |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PROTECTIVE ORDER** |
| v. | |
| KARL DOMM, | (Doc. 118) |
| Defendant. | |

Currently before the Court is the motion for a protective order filed by Defendant Karl Domm seeking a protective order barring the deposition of or production of documents by defense counsel's legal assistant Emmett Moore. (Doc. 118.) The motion has been fully briefed. (Docs. 120, 122.) Having considered the briefing, and the entire docket, and for the reasons discussed below, the Court finds entry of a protective order appropriate, and Defendant's motion will be granted in part and denied in part.

**I.    Brief Factual and Procedural Background**

In the interest of brevity, the Court highlights pertinent parts of the case background. Plaintiffs Markus Heitkoetter and Rockwell Trading Services, LLC ("Plaintiffs") bring several claims sounding in defamation against Defendant Karl Domm based on allegations that he published injurious falsehoods about Plaintiffs' investment program through videos and

1

comments on YouTube.[1]  As relevant to this motion, Plaintiffs' claims include an abuse of process claim, through which Plaintiffs allege that Defendant has used the discovery process and filing of a counterclaim to circumvent the Court's earlier protective order, which specified that "[n]o party, either personally or through their agents or attorneys, shall publish to the Internet any 'Disclosure or Discovery Material,' a term which shall mean for purposes of this Order any documents or information that is generated, produced or disclosed in disclosures or discovery of this matter." (*See* Docs. 43, 60).  Plaintiffs allege that Defendant used his counterclaim and a YouTube video about the counterclaim ("Counterclaim Video") to "circumvent this Court's January 6, 2023 Order and the final February 16, 2023 Protective Order, by reframing the protected discovery information as operative facts supporting the Counterclaim and, thereafter, discussing 'the Counterclaim' in the Counterclaim Video."  (Doc. 60 ¶ 72.)

The Court granted in part and denied in part Defendant's motion to strike and motion to dismiss on January 29, 2024.  (Doc. 86.)  Following that time, the parties have had numerous discovery disputes and appeared before the Court at an in-person status conference regarding discovery disputes on August 13, 2024, at which the parties represented that they had resolved all issues except for anticipated motions for protective orders regarding Mark Hodge and Emmett Moore.  (Doc. 107.)

### II. Motion for Protective Order

Defendant filed the instant motion for a protective order on October 2, 2024.  (Doc. 118.) Plaintiffs filed their opposition on October 9, 2024.  (Doc. 120.)  Defendant filed his reply on October 14, 2024.  (Doc 122.)

As an initial matter, the Court questions whether Defendant's motion is premature. Defendant notes in its initial motion that, "As of the filing of this motion, counsel for Defendant has not received a subpoena *duces tecum* for Emmett Moore's deposition, but respectfully requests the Court grant the relief sought in this motion, regardless, so as to avoid last-minute motion

---

[1] According to the operative complaint, Plaintiff Markus Heitkoetter is a successful and well-respected investor and trader in the stock and real estate markets. Plaintiff Heitkoetter founded Rockwell Trading which currently offers educational services and programs for anyone interested in investing and trading. Defendant is also an options trader who markets and sells a course in options trading, similar to that offered by Plaintiffs.  (Doc. 60.)

practice." (Doc. 118 at 4.) Defendant further notes "As of the filing of this motion, counsel for Defendant has not received a notice of document requests pursuant to a subpoena for Emmett Moore." (*Id.* at 5.) As it appears Plaintiffs will seek to depose Mr. Moore, the Court will address the parties' dispute. The Court appreciates the parties' advance efforts to address and resolve discovery disputes but cautions the parties against potentially premature discovery motions.

### A. Defendant's Position

Defendant seeks a protective order barring the deposition of Defendant's counsel's legal assistant and researcher Emmett Moore and prohibiting production of documents from Mr. Moore. (Doc. 118 at 7.) In the alternative, Defendant seeks an order limiting Mr. Moore's deposition to non-privileged matters regarding Defendant's relationship with Mr. Moore prior to the commencement of litigation and excluding any inquiries into Mr. Moore's background or other cases. (*Id.*) Defendant contends that the attorney-client privilege and work product doctrine protect legal staff such as Mr. Moore from intrusion during discovery. (*Id.* at 4-6.)

### B. Plaintiffs' Position

Plaintiffs request Defendant's motion to bar or limit Mr. Moore's deposition be denied. (Doc. 120.) Plaintiffs contend that Mr. Moore is not shielded by the attorney-client privilege or work product doctrine. (*Id.* at 7-12.) Plaintiffs further contend that Mr. Moore's post-litigation conduct is relevant to the abuse of process claim given similarities between Defendant's conduct with the Counterclaim Video and Mr. Moore's conduct in prior litigation. (*Id.* at 9.)

### C. Relevant Terms of the Proposed Protective Order

Defendant has not submitted a proposed Protective Order. (*See* Docs. 118, 122.) Instead, Defendant requests an order barring deposition of Mr. Moore and prohibiting production of documents from Mr. Moore, or limiting Mr. Moore's deposition to non-privileged matters and excluding any inquiry into Mr. Moore's background or other cases. (Doc. 118 at 7.)

### III. Discussion

### A. Legal Standards for a Motion for Protective Order

The Court is vested with broad discretion to manage discovery. *Dichter-Mad Family Partners, LLP v. U.S.*, 709 F.3d 749, 751 (9th Cir. 2013) (per curiam); *Surfvivor Media, Inc. v.*

*Survivor Prods*., 406 F.3d 625, 635 (9th Cir. 2005).  District courts also have broad discretion to determine whether a protective order is appropriate and, if so, what degree of protection is warranted. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see also Phillips ex rel. Estates of Byrd v. Gen. Motors Corp*., 307 F.3d 1206, 1211–12 (9th Cir. 2002) (finding that the law gives district courts broad latitude to grant protective orders to prevent disclosure of materials for many types of information).  Under Rule 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: [ ] forbidding the disclosure or discovery; … [ ] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; …[or] requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1).

The party seeking to limit discovery has the burden of proving "good cause," which requires a showing "that specific prejudice or harm will result" if the protective order is not granted.  *In re Roman Catholic Archbishop of Portland*, 661 F.3d 417, 424 (9th Cir. 2011) (citing *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1130 (9th Cir. 2003)); see Fed. R. Civ. P. 26(c); accord *Beckman Indus., Inc. v. International Ins. Co*., 966 F.2d 470, 476 (9th Cir. 1992) (noting that "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test" (citation omitted)); *see also Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096-97 (9th Cir. 2016) (listing as examples of compelling reasons when "a court record might be used to 'gratify private spite or promote public scandal,' to circulate 'libelous' statements, or 'as sources of business information that might harm a litigant's competitive standing' " (citation omitted)).

**B.  Scope of the Proposed Protective Order**

1. <u>Barring or Limiting Scope of Emmett Moore's Deposition</u>

Defendant argues that any deposition of Mr. Moore should be prohibited or limited based upon attorney-client privilege and work product doctrine, while Plaintiffs seek an unlimited deposition of Mr. Moore or, at minimum, to depose Mr. Moore regarding nonprivileged matters.

4

(Doc. 118, Doc. 120 at 7.)

The attorney-client privilege applies "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n. 2 (9th Cir.1992) (quoting *Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977)). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) (quoting *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).

"It has long been held that the [attorney-client] privilege applies only to members of the bar of a court or their subordinates" such as law students, paralegals, investigators, or others "acting as the agent of a duly qualified attorney under circumstances that would otherwise be sufficient to invoke the privilege." *Cookie Dep't, Inc. v. Hershey Co.*, No. 20-cv-09324-KAW, 2022 WL 2232223, at *1 (N.D. Cal. June 17, 2022) (quoting *Dabney v. Inv. Corp. of Am.*, 82 F.R.D. 464, 465 (E.D. Pa. 1979)). Though the Ninth Circuit has not clarified the standard for deposition of opposing counsel, many "district courts in this circuit have adopted the Eighth Circuit test from *Shelton...*" *LionHead Glob. No 2, LLC v. Todd Reed, Inc.*, No. 2:19-cv-07903-JWH-AFM, 2020 WL 10692515, at *2 (C.D. Cal. Dec. 14, 2020) (collecting cases).

Under the *Shelton* standard, the party seeking the deposition of opposing counsel must show: "(1) no other means exist to obtain the information than to depose opposing counsel…; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). The Eighth Circuit later clarified that "*Shelton* was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial." *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002); *see also Labbe v. Dometic Corp.*, No. 2:20-cv-1975-DAD-DMC, 2024 WL 992242, at *4 (E.D. Cal. Mar. 7, 2024) (declining to apply the *Shelton* test where the deponent had "never

been counsel of record for the current pending litigation"). California District Courts have applied this standard to both motions to compel and motions for protective orders. *See Cookie Dep't*, 2022 WL 2232223 (N.D. Cal. June 17, 2022) (applying *Shelton* standard to motion to compel paralegal's deposition); *Townsend v. Imperial Cnty.*, No. 12-cv-2739-WQH PCL, 2014 WL 2090689, at *2 (S.D. Cal. May 19, 2014) (applying *Shelton* "in determining whether to grant a protective order preventing [counsel's] deposition").

In a recent case in the Northern District of California, the court denied the plaintiff's request to compel the deposition of the defendant's paralegal based upon the paralegal's involvement in the litigation. *Cookie Dep't*, 2022 WL 2232223, at *1. In *Cookie Dep't*, the court first noted that the paralegal in question was "a member of the litigation team for this case, including having attended almost all of the depositions and participated in mediation," and therefore a deposition of that paralegal went "to the concerns of the Eighth Circuit, specifically the potential risk of disclosure of opposing counsel's litigation strategy." *Id.* at 1. Based upon review of an *in camera* submission, the court concluded that the information sought was privileged, as the paralegal "was not providing independent legal advice, but was relaying communications for legal advice to [defendant's] attorneys." *Id.* at 2. The court further found that the plaintiff did not demonstrate that the information sought was crucial to the preparation of the case and also did not demonstrate that no other means existed to obtain the information other than deposing the paralegal given the plaintiff's depositions of other relevant witnesses. *Id.*

Comparable to the paralegal in *Cookie Dep't*, Mr. Moore was retained by defense counsel as a legal assistant and researcher for this matter on or about April 7, 2022, the day Plaintiffs' initial complaint was served on Defendant. (Doc. 8, Doc. 118-1 ¶ 4; Doc. 120 at 2.) Defendant's counsel states that Mr. Moore is a signatory to the protective order in this matter and that his responsibilities in this matter include: reviewing correspondence with the client to stay informed about the case's progress, proofing pleadings and most discovery; occasionally performing legal research; attending some calls with Plaintiffs' counsel and Plaintiffs' associates; and formatting exhibits for pleadings and discovery. (Doc. 118-1 ¶¶ 5-6.) Defendant's counsel further states that "Communications regarding this case with Emmett Moore present have always included counsel

for Defendant's presence." (*Id.* ¶ 10.) Given that Mr. Moore is part of Defendant's current litigation team for the instant case, a deposition of Mr. Moore regarding his litigation-related activities implicates the Eighth Circuit's concerns of exposing defense counsel's litigation strategy. *See Cookie Dep't*, 2022 WL 2232223 at *1; *Pamida*, 281 F.3d at 730 ("The *Shelton* test was intend [sic] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy."). The *Shelton* test is therefore applicable to this issue.

Applying the *Shelton* test to this case, Plaintiffs do not show the necessary element that no other means exist to obtain the sought information. Plaintiffs appear to intend to use Mr. Moore's testimony to bolster their abuse of process claim and discuss the similarities between Defendant's Counterclaim Video and Mr. Moore's conduct in a separate case in which he was a defendant. (*See* Doc. 120.) However, Plaintiffs do not show that no other methods are available to obtain information related to their abuse of process claim. They do not explain why information related to the Counterclaim Video and the abuse of process claim could not be obtained from Defendant during discovery. As in *Cookie Dep't,* where the plaintiff could and did depose other key witnesses, Plaintiffs here had other opportunities to depose Defendant or propound discovery to determine whether Defendant received any advice or support from others in publishing his Counterclaim Video. Plaintiffs have therefore not shown that no other means exist to obtain that information. Because Plaintiffs have not satisfied a necessary element of the *Shelton* test, deposing Mr. Moore regarding the pending litigation is inappropriate. *Townsend*, 2014 WL 2090689, at *3 ("it is clear that Plaintiffs have not exhausted all avenues to the information they seek; *Shelton'* s first prong has failed. The Court does not design to consider the remaining *Shelton* prongs, as the three are a conjunctive predicate to the taking of opposing counsel's deposition."). Defendant has therefore demonstrated good cause for a protective order for Mr. Moore as to inquiries into litigation-related activities after his retention.

Plaintiffs argue that the attorney-client privilege should be construed more narrowly and the deposition should only be limited to protect communications on which Mr. Moore was acting as defense counsel's agent rather than also protecting potential communications where Mr. Moore

gave his own advice, communications in which Defendant sought Mr. Moore's advice, or general conversations regarding Plaintiffs. (Doc. 120 at 9-12.) While the attorney-client privilege is generally strictly construed, applying the *Shelton* test in the context of the contemplated deposition effectively protects against disclosure of opposing counsel's litigation strategy or privileged communications. The Court therefore applies the *Shelton* test to limit Mr. Moore's deposition to protect against disclosure of opposing counsel's litigation strategy or privileged communications.

Plaintiffs also seek to depose Mr. Moore regarding events prior to Mr. Moore's retention as a legal assistant in this action, including regarding any contact Defendant may have had with Mr. Moore prior to the litigation. (Doc. 120 at 7-8.) Defendant responds that Plaintiffs' counsel could and did ask Defendant during his deposition about communications with Mr. Moore prior to Mr. Moore's retention in the matter. (Doc. 122 at 3-5.) Defendant further appears to argue that attorney-client privilege or work product doctrine shield Mr. Moore from being deposed as to earlier events. (*Id.* at 3-5.)

While Defendant contends that he already truthfully responded to Plaintiffs' questions and Defendant states that his "first communication with Emmett Moore was in the first half of 2021, when [Defendant] called him to find [Defendant's] counsel of record's contact information for a legal question," Defendant does not explain why this would prohibit Plaintiffs from deposing Mr. Moore. (Doc. 122 at 3-5, Doc. 118-1 at 6.) Furthermore, as Mr. Moore did not serve as or support a "professional legal adviser" prior to his retention as a legal assistant in this matter, the attorney-client privilege does not shield Mr. Moore prior to his retention as legal assistant. *See Grand Jury Investigation*, 974 F.2d at 1071 n. 2. Similarly, Defendant does not explain how Mr. Moore would qualify for work product doctrine protection prior to his retention on Defendant's legal team. *See In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) ("to qualify for protection against discovery under [Rule 26(b)(3)], documents must have two characteristics: (1) they must be 'prepared in anticipation of litigation or for trial,' and (2) they must be prepared 'by or for another party or by or for that other party's representative.' "). Defendant has therefore not demonstrated good cause for prohibiting the

deposition of Mr. Moore as to relevant and proportional information prior to Mr. Moore's retention as a legal assistant.

In sum, Defendant has shown good cause for the deposition of Mr. Moore to be limited to inquiry into relevant and proportional information prior to Mr. Moore's retention as a legal assistant and researcher for Defendant's counsel on April 7, 2022.  As examples, conversations between Mr. Moore and Defendant related to the preparation of the videos challenged in this lawsuit are relevant and proportional to this case, as are Mr. Moore's prior business relationships with Defendant and any financial discussions between Mr. Moore and Defendant, among other pre-April 7, 2022 interactions with Defendant.

### 2. Discovery Requests

Defendant further requests that the Court issue an order prohibiting production of documents from Mr. Moore, contending that the documents sought include either "numerous attorney-client protected and work product privileged material" or amount to a "fishing expedition." (Doc. 118 at 4-5, 7.)  Defendant broadly asserts attorney-client privilege and work product doctrine but includes only three "examples" of Plaintiffs' discovery requests in his motion for the Court's consideration: "All Documents You [Moore] transmitted to Karl Domm related to one or both Plaintiffs"; "All Documents reflecting or related between You [Moore] and Karl Domm, RDK, LLC [sic], or Favorable Derivatives, LLC"; and "All Documents reflecting or related to communications between You [Moore] and any third parties that relate to employees or agents Plaintiffs [sic]."  (*Id.* at 5.)  Plaintiffs respond that Defendant has the burden of demonstrating that the attorney-client privilege or work product doctrine applies to these discovery requests.  (Doc. 120 at 11-12.)

As previously mentioned, "[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed."  *Martin*, 278 F.3d at 999.  "The same burden applies to the party asserting work product protection." *Eastman v. Thompson*, 594 F. Supp. 3d 1156, 1175 (C.D. Cal. 2022) (citing *Hernandez v. Tanninen*, 604 F.3d 1095, 1102 (9th Cir. 2010)). Defendant's request that the Court broadly apply the attorney-client privilege and work product doctrine to prohibit any production runs counter to the Ninth Circuit's warning to strictly

construe the privileges to avoid impeding full and free discovery of the truth. A blanket prohibition is especially unwarranted when only three "examples" of requests have been furnished. (*See* Doc. 118 at 5.) Furthermore, while the Court applied the *Shelton* test to guard against intrusion into defense counsel's litigation strategy, the Court does not find that attorney-client privilege shields Mr. Moore from all discovery. The Court therefore declines to rule on the "examples" of the requests and only addresses specific discovery requests implicating the attorney-client privilege and work product doctrine. Defendant has not shown good cause to support a protective order prohibiting the production of documents from Mr. Moore. Accordingly, Defendant's request for an order prohibiting production is denied without prejudice as to Defendant raising specific disputed discovery requests that implicate the attorney-client privilege or work product doctrine.[2] Nonetheless, in the interest of providing a framework to the parties, given that Mr. Moore commenced employment on the litigation team on April 7, 2022, documents post-dated April 7, 2022 and prepared for this litigation appear to be protected by the attorney client privilege or work product doctrine.

### IV. Conclusion and Order

Accordingly, Defendant's Motion for a Protective Order (Doc. 118) is GRANTED for the documents and information noted in this Order.

IT IS SO ORDERED.

Dated:   **November 13, 2024**          /s/ *Barbara A. McAuliffe*          
                                        UNITED STATES MAGISTRATE JUDGE

---

[2] Prior to any potential filing or refiling, the parties must first meet and confer to narrow any disputed discovery requests. *See* L.R. 251(b). The parties are reminded that the Court may order the parties to appear in person to resolve outstanding discovery disputes if the Court finds that the parties' conduct does not assist in securing the just, speedy, and inexpensive determination of the action and proceedings. *See* Fed. R. Civ. P. 1.